Stanley R. **HUFFINES**, Appellant–
Defendant,

v.

**STATE of Indiana**, Appellee–Plaintiff.

No. 49A02–0006–CR–377.

Court of Appeals of Indiana.

Dec. 21, 2000.

---

Timothy J. Burns, Robert W. Hammerle, Indianapolis, Indiana, Attorneys for Appellant.

Karen M. Freeman–Wilson, Attorney General of Indiana, Christopher L. Lafuse, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Stanley Huffines ("Huffines") appeals the denial of his motion to suppress. We reverse.[1]

### Issue

Huffines raises one issue: whether a "search warrant was invalid due to [the] dissipation of probable cause because of the passage of eight (8) days from issuance and eleven (11) days since the incident giving rise to probable cause."

### Facts and Procedural History

Within seventy-two hours prior to May 27, 1999, Officer Douglas Cook ("Cook") and a confidential informant ("C.I.") went to Huffines' residence to purchase drugs. C.I. entered Huffines' home and observed cocaine therein. Huffines stated that the substance was cocaine and that it was for sale. C.I. purchased cocaine, exited the home, and gave the cocaine to Cook. In an affidavit seeking a search warrant, Cook detailed C.I.'s observation and cocaine purchase and alleged "that a controlled substance, to wit: Cocaine ... is being kept, used and sold from" Huffines' residence. On May 27, 1999, at 1:30 p.m., the court issued a warrant, based upon the affidavit, to search Huffines' residence. The warrant authorized the police to search for "[c]ocaine, an extract of Coca, all monies, papers, records, documents, electronic information, or any other documentation which indicates or tends to indicate a violation or a conspiracy to violate the Indiana Controlled Substance Act." During the search, which was executed on June 4, 1999, at 6:32 a.m., the police discovered the following items:

inside Huffines' right front shirt pocket, clear plastic baggies containing a total of 7.0566 grams of cocaine and 0.5210 grams of methamphetamine;

in Huffines' right front pants pocket, $2,153;

in the small of Huffines' back inside his pants, a Smith and Wesson 5 shot revolver handgun loaded with 5 live rounds;

inside desk drawers, several clear plastic baggies containing a total of 3.7391 grams of cocaine and 24.7271 grams of methamphetamine in a Crown Royal bag, a box of clear sandwich baggies that was concealing a small clear plastic bag containing 1.18 grams of marijuana, $270, a small clear plastic baggy containing 0.2362 grams of cocaine, one marijuana cigarette, 2 partially smoked marijuana cigarettes, a box containing 2 spoon like devices and 1 knife like device coated with a cocaine/methamphetamine mix, and partial straws and razor blades coated with cocaine residue;

on the desk, $29;

in a safe, several clear plastic baggies containing a total of 58.6286 grams of cocaine, 2.3521 grams of methamphetamine, and 5.26 grams of marijuana, 4 handguns; and

in a second safe, $4,000 and 3 handguns with ammunition.

---

1. We wish to thank the administration, staff, and students of the Notre Dame Law School, where we held oral argument on November 15, 2000. We would also like to commend counsel for their excellent arguments and for traveling to South Bend.

On June 8, 1999, the State charged Huffines with dealing in cocaine,[2] a Class A felony, possession of cocaine,[3] a Class C felony, dealing in a controlled substance,[4] a Class B felony, possession of a controlled substance,[5] a Class D felony, and possession of marijuana,[6] a Class A misdemeanor. Huffines filed a motion to suppress the evidence seized during the search. After holding a hearing on the matter, the trial court denied Huffines' motion. Huffines filed and the court denied his motion to reconsider the motion to suppress. The trial court certified to this court its order denying Huffines' motion. We accepted jurisdiction under Appellate Rule 4(B)(6), and this interlocutory appeal ensued.

### Discussion and Decision

Huffines contends that his suppression motion should have been granted because the police relied upon a stale search warrant to search his home. His argument is as follows. The probable cause to search his residence was based upon a single occurrence, that is, C.I.'s observation of drugs in Huffines' residence. The probable cause dissipated during the eight- to eleven-day period that separated the day that C.I. saw the drugs from the day that the police performed the search. Once the warrant was no longer supported by probable cause, it was void as a matter of law. Therefore, the police relied upon a defective warrant to perform their search; the search was illegal under the Fourth Amendment of the U.S. Constitution and Article One, Section 11 of Indiana's constitution; and the court should have suppressed the evidence obtained during the search. The State responds that the trial court properly denied Huffines' motion to suppress because the warrant was not stale at the time of execution. Rather, the

search fell within the ten-day time frame permitted by statute to execute ·a warrant.[7]

 In a recent decision reversing the denial of a motion to suppress we set out the relevant standards of review.

> When ruling on the admissibility of evidence, the trial court is afforded broad discretion, and Indiana appellate courts will only reverse the ruling upon a showing of abuse of discretion. An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court.
>
> . . . .
>
> [W]hen reviewing a trial court's ruling on the validity of a search and seizure: we consider the evidence most favorable to the ruling and any uncontradicted evidence to the contrary to determine whether there is sufficient evidence to support the ruling. If the evidence is conflicting, we consider only the evidence favorable to the ruling and will affirm if the ruling is supported by substantial probative evidence.

*Hanna v. State*, 726 N.E.2d 384, 387–88 (Ind.Ct.App.2000) (citations omitted).

"A search warrant must be: (1) executed not more than ten (10) days after the date of issuance[.]" IND.CODE § 35–33–5–7(b). Indisputably, the search of Huffines' residence was conducted within ten days after the warrant was issued and was therefore in compliance with Indiana Code Section 35–33–5–7(b). However, the fact that the search did not violate the statute does not address Huffines' separate constitutional arguments. *See Jaggers v. State*, 687 N.E.2d 180, 183 (Ind.1997) (noting the Fourth Amendment's and Indiana's consti-

---

2. *See* IND.CODE § 35–48–4–1.

3. *See* IND.CODE § 35–48–4–6.

4. *See* IND.CODE § 35–48–4–2.

5. *See* IND.CODE § 35–48–4–7.

6. *See id.*

7. At oral argument, discussion of the good faith exception occurred. However, the State did not raise this issue in its appellee's brief; hence, the defense did not address the good faith exception in its reply brief. As such, we conclude that the State has waived this argument.

tutional and statutory protections "against unreasonable searches and warrants without probable cause").

The ten-day limitation of Indiana Code Section 35–33–5–7, enacted in 1981, provides the same period of time that exists for the execution of a federal search warrant. *See* Fed.R.Crim.P. 41. Under the federal rule, a federal search warrant must state "a specified period of time" within which the warrant may be executed not to exceed ten days from the issuance of the warrant. *See id.* One commentator has pointed out that "[e]ven if the issuing magistrate specifies a period of ten days, however, some federal courts have held that this period may be excessive under certain circumstances." 16 WILLIAM ANDREW KERR, INDIANA PRACTICE, CRIMINAL PROCEDURE PRETRIAL § 2.4(c), at 230 (1991).

> According to this viewpoint, probable cause must exist at the time that a search warrant is executed. Therefore, an officer who obtains a search warrant must execute the warrant immediately or must reevaluate all of the facts and circumstances again when executing the warrant at a later time to determine if probable cause still exists at that time. If the facts or circumstances indicate that probable cause does not continue to exist from the time that a warrant is issued to the time that it is finally executed, then the warrant is invalid and cannot be executed.

*Id.* at 230–31 (footnote omitted).

*United States v. Gibson*, 123 F.3d 1121 (8th Cir.1997) exemplifies the aforementioned viewpoint. Gibson challenged the district court's denial of his motion to suppress, arguing that the search warrant was stale because probable cause dissipated during a four-day delay in executing the warrant. *See id.* at 1124. The Eighth Circuit set out the law as follows:

> "Probable cause is a fair probability that contraband or evidence of a crime will be found in the location to be searched." *LaMorie*, 100 F.3d at 552. We determine probable cause "under a totality-of-

the-circumstances approach." *Id.* at 553. A delay in executing a search warrant may render stale the probable cause finding. *United States v. Maxim*, 55 F.3d 394, 397 (8th Cir.), *cert. denied*, 516 U.S. 903, 116 S.Ct. 265, 133 L.Ed.2d 188 (1995). Important factors to consider in determining whether probable cause has dissipated, rendering the warrant fatally stale, include *the lapse of time since the warrant was issued, the nature of the criminal activity, and the kind of property subject to the search. Id. See also United States v. Rugh*, 968 F.2d 750, 754 (8th Cir.1992).

*Id.* (emphasis added). In *Gibson*, the detective testified that he waited four days to execute the search "to provide some protection for the identity and safety of the informant." *Id.* at 1125. Further,

> [t]o make certain that there still would be controlled substances in the apartment when the warrant was executed, [the detective] asked the informant to notify him if there appeared to be any increase or decrease in traffic to and from Gibson's apartment. [The detective] testified that the traffic flow at Gibson's apartment would indicate the presence of controlled substances and drug trafficking activity. The district court denied Gibson's suppression motion, finding that although there was no evidence here of a large-scale drug operation, the police had information available to them indicating on-going drug activity at Gibson's apartment. The district court concluded that the confidential informant's statements about drug trafficking activity at the apartment were sufficiently indicative of continued drug dealing to provide probable cause at the time the warrant was issued.

*Id.* The appellate court concluded that under the totality of the circumstances standard, the district court's findings were not clearly erroneous and that the court did not apply an erroneous view of the applicable law. *See id.* Specifically, "[b]ecause continuing criminal activity was sus-

pected and corroborated, probable cause did not dissipate in the four days that lapsed between the time the state court issued the warrant and its execution." *Id.*

Using this same reasoning, other federal courts have reached similar conclusions. *See United States v. Bedford,* 519 F.2d 650, 655–57 (3d Cir.1975), *cert. denied,* 424 U.S. 917, 96 S.Ct. 1120, 47 L.Ed.2d 323 (1976); *United States v. Lemmons,* 527 F.2d 662, 664 (6th Cir.1975), *cert. denied,* 429 U.S. 817, 97 S.Ct. 60, 50 L.Ed.2d 77 (1976); *United States v. Nepstead,* 424 F.2d 269, 271 (9th Cir.), *cert. denied,* 400 U.S. 848, 91 S.Ct. 50, 27 L.Ed.2d 86 (1970) (adopting reasoning that search may be executed anytime within ten days after warrant is issued, "provided that the probable cause recited in the affidavit continues until the time of execution, giving consideration to the intervening knowledge of the officers and the passage of time" and concluding that suppression was unnecessary where search occurred six days after warrant issued, house was kept under surveillance for signs of activity, and nothing occurred within that time to change the facts upon which original affidavit was based and which gave the agents probable cause to believe articles subject to seizure were in the house).

■ In the present case, the police did not immediately execute the search warrant. Instead, they waited eight days before searching Huffines' home. While not per se unreasonable, the delay was certainly close to the ten-day statutory limit. The warrant was based on Cook's affidavit, which stated that C.I. observed and purchased cocaine from Huffines at his residence within three days prior to the issuance of the warrant and concluded from this one observation and sale "that a controlled substance, to wit: Cocaine … is being kept, used and sold from" Huffines' residence. If Cook had information regarding additional sales, observations of drugs, or other evidence of criminal activity connected to Huffines, he did not include it in his affidavit. Yet, the warrant

authorized the police to search for "[c]ocaine, an extract of Coca, all monies, papers, records, documents, electronic information, or any other documentation which indicates or tends to indicate a violation or a conspiracy to violate the Indiana Controlled Substance Act." Huffines does not challenge the validity of the warrant at the time of its issuance.

At the suppression hearing, Cook testified that after the warrant was issued, he had a telephone call placed to Huffines' residence to determine if he was at home. He further testified that during the following days, he made a number of trips past Huffines' residence to determine if Huffines was home, that Memorial Day weekend fell within that time, that he was busy on a different search on one of the days, and that he was under the impression that he had ten days to serve the warrant. The State presented no evidence that the police conducted surveillance of Huffines' residence between the time the warrant was issued and when it was executed. The State did not present evidence regarding any increase or decrease in traffic to and from Huffines' home or any evidence indicating on-going drug activity.

Utilizing the totality of the circumstances approach of the federal courts, we conclude that the State has failed to demonstrate that continuing criminal activity was suspected and corroborated. As such, probable cause dissipated in the eight days that lapsed between the time of the warrant's issuance and the search of Huffines' home. Therefore, when the police conducted the search, they did so based upon a warrant not supported by probable cause. "Generally, law enforcement officials should conduct searches pursuant to a warrant supported by probable cause." *Purdy v. State,* 708 N.E.2d 20, 22 (Ind.Ct. App.1999) (citing *United States v. Lewis,* 71 F.3d 358, 361 (10th Cir.1995)). "This rule is subject only to a few established and well-delineated exceptions," *see State v. Jorgensen,* 526 N.E.2d 1004, 1005 (Ind. Ct.App.1988) (citing *Schneckloth v. Busta-*

*monte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973)), none of which are alleged by the State. Accordingly, the search, based upon a warrant that lacked probable cause, was improper.

We next address Huffines' state law claim. "Rather than employing federal constitutional concepts such as the warrant requirement and probable cause, our supreme court has enunciated a separate and distinct method of analyzing claims of state constitutional search and seizure violations: the State bears the burden of showing that, in the totality of the circumstances, the intrusion was reasonable." *Callahan v. State,* 719 N.E.2d 430, 436 (Ind.Ct.App.1999) (citing *Baldwin v. Reagan,* 715 N.E.2d 332, 337 (Ind.1999)); *see also Moran v. State,* 644 N.E.2d 536, 539 (Ind.1994) (noting that the first clause of Article I, Section 11 of the Indiana Constitution "prohibits any search or seizure that is unreasonable"); *Ashley v. State,* 251 Ind. 359, 241 N.E.2d 264 (1968).

In *Ashley,* the police filed an affidavit stating that they had arranged for a woman to buy marijuana at the defendant's house on October 3, 1964, and that they therefore had probable cause for a warrant to search the defendant's home for evidence of drugs. The warrant was issued and the search conducted on October 11, 1964. Our supreme court concluded:

> Although there can be no precise rule as to how much time may intervene between the obtaining of the facts and the issuance of the search warrant, in dealing with a substance like marihuana, which can be easily concealed and moved about, probable cause to believe that it was in a certain building on the third of the month is not probable cause to believe that it will be in the same building eight days later. Therefore, *since the affidavit only made a showing of probable cause existing on October 3, 1964,*

and not on October 11, 1964, when the search warrant was issued the search warrant was defective and it was error to deny appellant's motions to quash the affidavit for the search warrant and to suppress the evidence thereunder seized.

*Id.,* 251 Ind. at 368, 241 N.E.2d at 269 (emphasis added).

Like *Ashley, Moran* concerned the alleged staleness of information to support the *issuance* of a warrant, but is also instructive here. In *Moran,* our supreme court noted, "the facts in the affidavit permitted the conclusion of an ongoing growing enterprise and not merely the conclusion [of the court in *Ashley*] that small amounts of marijuana were present in a building for personal use or sale, heretofore deemed stale after eight days." 644 N.E.2d at 542. Our supreme court then concluded that the "search pursuant to [the] warrant was reasonable under the state standard of reasonableness." *Id.*

We have found only one Indiana case addressing the staleness that might occur between the time of issuance and execution of a warrant and implying that probable cause is necessary at the time of execution. *See Breitweiser v. State,* 704 N.E.2d 496 (Ind.Ct.App.1999). Breitweiser alleged, "even if probable cause existed when the search warrant was issued, it had dissipated by the time police executed the search warrant three days later." *Id.* at 501. We concluded that the initial probable cause [8] supporting the issuance of the search warrant continued to exist at the time of the search, despite the three-day delay in its execution. *Id.* We explained,

> testimony at the hearing permitted the reasonable inference that a marijuana cultivation operation existed at Breitweiser's residence. Breitweiser points to nothing, other than the passage of three days during the period between the issu-

---

**8.** The initial probable cause was based on an anonymous tip that drug activity was occurring at Breitweiser's, a garbage pick-up at Breitweiser's that revealed plant-like frag-

ments later determined to be marijuana, and a subsequent garbage pick-up that revealed numerous marijuana stems. 704 N.E.2d at 500.

ance and execution of the search warrant, which affected the facts which gave police probable cause to search his home.

*Id.* We distinguished *Ashley* as follows:

First, the affidavits in *Ashley* merely recited a single, isolated drug transaction at the residence whereas the alleged facts in [Breitweiser's] case revealed repeated drug activity over a period of time. Further, the affidavits in *Ashley* merely led to the conclusion that small amounts of marijuana were present in the residence for personal use or sale whereas the facts in the present case permitted the conclusion that there was ongoing marijuana cultivation at the residence. Finally, the officers in *Ashley* merely sought the warrant to search for marijuana whereas the officers in the present case sought a warrant to search not only for marijuana but also for paraphernalia and sales records pertaining to illegal drug activity. Thus, *Ashley* does not address the issue of staleness when evidence regarding drug paraphernalia and evidence of drug sales are also sought.

*Id.* at 500–01 n. 2.

Applying the rationale of *Moran* and *Ashley* and distinguishing *Breitweiser,* we conclude that the search of Huffines' residence was unreasonable under Indiana law. To reiterate, the police waited eight days to execute the search of Huffines' home, the same number of days that elapsed in *Ashley* between the showing of probable cause and issuance of the search warrant. And here, as in *Ashley,* the warrant was based on a single, isolated drug transaction. There is no evidence of repeated or ongoing criminal activity. The affidavit did not detail the amount of drugs that C.I. saw in Huffines' home. Thus, we cannot know whether it was a large amount or only the amount that C.I. purchased.[9] Under these circumstances, we cannot say that probable cause still existed on the day of the search. Hence, the motion to suppress should have been granted.[10]

Reversed.

NAJAM and VAIDIK, JJ., concur.

9. While the warrant permitted the police to search for cocaine, "monies, papers, records, documents, electronic information, or any other documentation which indicates or tends to indicate a violation or a conspiracy to violate the Indiana Controlled Substance Act," this may have been overly broad considering that only one isolated incident formed the basis of the affidavit.

10. Our conclusion does not disregard Indiana Code Section 35–33–5–7(b). The statute would still apply to invalidate a warrant after more than ten days had passed from its issuance, regardless of whether probable cause still existed.