**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEY FOR APPELLANT:

**DEBORAH K. SMITH**
Sugar Creek Law
Thorntown, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**JUSTIN F. ROEBEL**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOHN ORVILLE STUDY, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 06A04-1308-CR-391 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee/Plaintiff. | ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Matthew C. Kincaid, Judge
Cause No. 06D01-0710-FB-115

**April 10, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

## CASE SUMMARY

Over the course of an approximately eighteen-month period, Appellant-Defendant John Orville Study committed four bank robberies in Boone County. These robberies included two separate robberies of a Key Bank branch in Zionsville and two separate robberies of a State Bank of Lizton branch in Dover. During each of the four robberies, Study wore what appeared to be the same clothing, was armed with what appeared to be the same gun, and used a similar modus operandi. After one of the robberies, Study led police on a high speed chase after a concerned citizen heard a description of the suspect's vehicle over the police scanner and notified police as to the location and direction of travel of the suspect's vehicle. At some point, Study also stole a truck from an auto dealership that is located in Boone County. He later used the stolen truck to drive away from one of the robberies.

Appellee-Plaintiff the State of Indiana subsequently charged Study with four counts of Class B felony robbery, six counts of Class B felony criminal confinement, one count of Class D felony resisting law enforcement, one count of Class D felony pointing a firearm, and one count of Class D felony auto theft. The State also alleged that Study was a habitual offender. Following trial, the jury found Study not guilty of pointing a firearm but guilty of each of the remaining charges. The jury also determined that Study was a habitual offender.

On appeal, Study raises numerous claims which we restate as follows:

I.       whether the trial court erred in denying Study's request to sever the charges and order separate trials;
II.     whether the trial court abused its discretion in denying Study's request to dismiss the charge relating to the March 21, 2006 robbery;

2

III.    whether the trial court abused its discretion in admitting certain evidence at trial; and

IV.    whether the trial court erred in entering separate convictions for the related robbery and criminal confinement charges.

We affirm.

## FACTS AND PROCEDURAL HISTORY

*A. Facts Relating to the March 21, 2006 Robbery of the*
*Key Bank Branch in Zionsville*

During the early afternoon hours of March 21, 2006, the Key Bank branch in Zionsville was robbed. The robber was wearing a dark-green colored Carhartt jacket, boots, gloves, jeans, and a ski mask. The robber was also armed with a gun that was at least partially silver in color.

Upon entering the bank, the robber yelled "this is a bank robbery" and walked behind the teller line. Tr. p. 427. The robber stated that he wanted a trash can to put the money in and that he did not want bait money or dye packs. The robber removed the money straps and checked for dye packs. After collecting the money, the robber ordered the employees to go behind the bank's counter and to get down onto the floor. The employees complied as the robber "pointed the gun" in their direction. Tr. p. 359. After the robber left the bank, one of the employees ran to the bank's door and observed the robber leaving in a red Jeep. The robber took approximately $4,000 from the bank on this date.

*B. Facts Relating to the April 16, 2007 Robbery of the*
*State Bank of Lizton Branch in Dover*

On April 16, 2007, at approximately 5:00 p.m., a robber entered the Dover branch of

3

the State Branch of Lizton. The robber was wearing a ski mask, a green Carhartt-style jacket, blue jeans, work boots, and gloves. The robber had a gun that was at least partially silver in color in his hand, which he was "kinda waving, pointing." Tr. p. 372.

Upon entering the bank, the robber went behind the teller line and took cash from the bank employees. The robber grabbed a trash can from the drive-up teller's workspace. The robber said that he wanted money without dye packs, straps, or bait money. After the robber collected money from each employee and placed the money in the trashcan, the robber ordered the employees into the vault. The robber ordered one of the employees to give him additional money from the vault and again demanded "no dye packs." Tr. p. 374. After receiving money from the vault, the robber closed the employees inside the vault and "attempted to turn" the wheel which locks the vault. Tr. p. 384. The employees stayed in the vault until they heard the robber leave the bank. The employees then observed the robber leaving in a white Chrysler or Dodge vehicle. The robber took approximately $40,000 from the bank on this date.

### C. Facts Relating to the July 19, 2007 Robbery of the State Bank of Lizton Branch in Dover

On July 19, 2007, at approximately 5:00 p.m., the Dover branch of the State Bank of Lizton was robbed. The robber was "dressed exactly the same" as the robber who committed the April 16, 2007 robbery. Tr. p. 254. The robber wore a mask, gloves, and a bulky jacket that was described as "greenish" in color. Tr. p. 267.

Upon entering the bank, the robber wielded a gun and demanded money. The robber

indicated that he wanted money without dye packs, straps, or bait money. The robber came around behind the teller line and took the employees' money. The robber used a trash can to collect the money. The robber also took an employee's purse. The robber then ordered the employees into the vault at gunpoint and demanded additional money from the vault. After receiving money from the vault, the robber shut the vault door, leaving the employees inside. The employees stayed in the vault until they heard the robber leave the bank. The robber took approximately $25,000 from the bank on this date.

A bank customer, who had just left the bank, observed the robbery from outside. The customer had a clear view of the man with a mask holding a trashcan in the tellers' area. The customer had seen this same man exit a white Dodge Stratus with Indiana license plate 93T1720 before entering the bank. The customer saw the robber leave the bank wearing a green Carhartt jacket and black mask. The customer also saw that the robber was carrying a gun that was at least partially silver in color and a trash can with money and other items. The customer shared a description of the robber's vehicle with police.

A short time later, a farmer, who had overheard police radio traffic describing the robber's vehicle and direction of travel, noticed a white Dodge Stratus matching the description driving at a relatively high rate of speed. The farmer pursued and at one point observed the Stratus run off of the road, through a fence and a ditch, and then come back up on the road. The Stratus then stopped and the driver removed wire from the vehicle.

Eventually, police officers caught up to the farmer, took over the pursuit of the Stratus, and followed the vehicle for another fifteen to twenty minutes at speeds of

5

approximately 125-130 miles per hour.  One of the pursuing officers noticed the driver of the Stratus retrieve and point a handgun at the pursuing officers.  The chase ended when one of the pursuing officers ran out of fuel, another crashed, and the remaining officers lost sight of the vehicle.

*D.  Facts Relating to the Theft of a*
*Silver 2008 Ford F-350 Super-Duty Pickup Truck*

At some point in September of 2007, Study went to the Kenny Vice Ford auto dealership in Lagoda, Indiana.  Study told the salesman that he was interested in looking at a 2008 Ford F-350 Super-Duty pickup truck, and the salesman showed Study the truck.  The key, which was in the truck when it was shown to Study, could not be located later that same day.

One evening, during the middle of September of 2007, Study asked his then-wife, Jill Ridge, to take him to the Kenny Vice Ford dealership.  Study indicated that he needed to pick up a truck from the dealership.  Ridge found it unusual that Study was picking up a truck after the dealership closed for the evening but complied with Study's request.  Ridge observed that Study sped as he left the dealership in the truck.  On October 2, 2007, the dealership reported to police that a silver 2008 Ford F-350 Super-Duty pickup truck was missing.

*E.  Facts Relating to the September 19, 2007 Robbery of the*
*Key Bank Branch in Zionsville*

On September 19, 2007, the Key Bank branch in Zionsville was robbed.  The robber was wearing a dark green Carhartt jacket, jeans, gloves, and a ski mask.  The robber wielded

6

a gun that was at least partially silver in color, which he pointed at bank employees.

Upon entering the bank, the robber ordered the bank employees to let him behind the teller line. He took a trash can, emptied each of the cash drawers, and placed the money in the trash can. The robber asked for no dye packs and opened each pack of bills. After robbing the bank, the robber drove away from the bank in a silver or gray Ford pickup truck. The robber took approximately $12,000 from the bank on this date.

*F. Facts Relating to the Identification of Study as a Suspect in the
Theft and Robberies and Study's Arrest*

In October of 2007, a Putnam County Sheriff's Deputy encountered a white Dodge Stratus with a broken windshield and no license plate "parked down somewhat off a little lane" away from the nearest residence in a "rural and remote" area near Reelsville. Tr. p. 512. The land upon which the deputy found the Stratus was owned by Study and Ridge. Because the deputy had been involved in the pursuit of a similar vehicle traveling toward this location on July 19, 2007, the deputy compared the vehicle with pictures from the prior pursuit and determined that "it was obvious that the vehicle was one in [sic] the same." Tr. p. 512.

Officers subsequently obtained warrants to seize the vehicle and to search a travel trailer and a partially constructed garage, both of which were located on the property. During the search of the garage, officers recovered two trash cans. During the search of the travel trailer, officers recovered the registration application for a red Jeep bearing the name Jill Ridge of Zionsville, the window sticker for the 2008 Ford F-350 Super-Duty pickup truck

7

that was stolen from the Kenny Vice Ford dealership, and Study's social security card.

Zionsville police subsequently obtained and executed search warrants on Ridge's residence and Jeep, which was parked in front of the residence. During the search of the Jeep, officers recovered a hotel receipt bearing Study's name, a loaded black and silver Smith and Wesson revolver, and a pair of brown men's shoes. During the search of the residence, officers recovered a pair of men's Carhartt jeans.

On November 21, 2007, Study was arrested after a police chase in Madison County, Florida. The chase ended when the motorhome which Study was driving caught fire after an officer shot the tires of the motorhome. At the time of his arrest, Study was in possession of the key to the stolen truck. Officers recovered a green Carhartt jacket and at least some of the contents of the purse that was taken from the bank employee during the July 19, 2007 robbery, including a wallet, a cellular phone, and other personal items, from inside the motorhome. Police also recovered various licenses plates, including Indiana plate 93T1720, from inside the motorhome.

On November 27, 2007, officers in Livingston County, Illinois recovered the stolen truck outside of Pontiac, Illinois. Around the same time, the motorhome was reported stolen from Pontiac R-V Sales, which was located a few miles from where the truck was recovered.

### G. Facts Relating to Criminal Charges and Pre-Trial Motions

On October 29, 2007, the State charged Study with one count of Class B felony robbery in relation to the April 16, 2007 robbery, and with one count of Class B felony robbery in relation to the July 19, 2007 robbery. On September 14, 2010, the State filed an

8

allegation that Study is a habitual offender. On March 29, 2012, the State charged Study with four counts of Class B felony criminal confinement in relation to the April 16, 2007 robbery. The State also charged Study with two counts of Class B felony criminal confinement, one count of Class D felony pointing a firearm, and one count of Class D felony resisting law enforcement in relation to the July 19, 2007 robbery. The State amended the habitual offender allegation on August 2, 2012. On August 20, 2012, the State charged Study with one count of Class B felony robbery in relation to the March 21, 2006 robbery, one count of Class B felony robbery in relation to the September 19, 2007 robbery, and one count of Class D felony auto theft in relation to the theft of the 2008 Ford F-350 Super-Duty pickup truck.

In motions filed September 17, 2012 and September 24, 2012, Study moved to dismiss the criminal confinement charges, the pointing the firearm and resisting charges, and the robbery charge relating to the March 21, 2006 robbery, alleging various defects. The trial court denied the motions with regard to the criminal confinement, pointing the firearm, and resisting charges. The trial court granted the motion and dismissed the robbery charge relating to the March 21, 2006 robbery, finding that prosecution was barred by the statute of limitations. However, the trial court subsequently allowed the State to amend the charge to include an allegation that the statute of limitation had been tolled due to concealment.

On October 5, 2012, Study filed motions to sever the charges and to dismiss the amended robbery charge relating to the March 21, 2006 robbery. The trial court denied these motions on October 22, 2012.

9

*H. Facts Relating to Trial*

Beginning on April 29, 2013, the trial court conducted a three-day jury trial. At trial, Study renewed his motions to sever the charges and to dismiss the amended robbery charge. Study also filed a motion to suppress certain evidence. The trial court denied the motions to sever and suppress and took the motion to dismiss under advisement. During trial, the State presented multiple witnesses who testified regarding the four bank robberies and the theft of the 2008 Ford F-350 Super-Duty pickup truck.

With respect to the March 21, 2006 robbery, bank employees described the dark-green Carhartt jacket worn by the robber as being the same as or similar to the green Carhartt jacket that was recovered at the time of Study's arrest and admitted into evidence as Exhibit Eighty-two. Bank employees also described the gun that was wielded by the robber as being the same as or very similar to the revolver which was recovered during the search of Ridge's Jeep and admitted into evidence at trial as Exhibit Thirty. In addition, bank employees indicated that the red Jeep which the robber drove away from the bank in appeared to be the same as or similar to the red Jeep which was depicted in Exhibits Twenty-two and Twenty-three.

With respect to the April 16, 2007 robbery, bank employees described the gun that was wielded by the robber as being the same as or very similar to Exhibit Thirty. Bank employees indicated that the white vehicle in which the robber drove away from the bank appeared to be the same as or similar to the white vehicle which was depicted in Exhibit Ten.

With respect to the July 19, 2007 robbery, the customer who witnessed the robbery

10

from outside the bank described the gun that was wielded by the robber as being the same as or very similar to Exhibit Thirty. Another customer, who had gone through the drive-up window, identified the white vehicle in which the robber drove away from the bank as being the same as or similar to the white vehicle depicted in Exhibit Ten. One of the officers that pursued Story during the high-speed chase testified that during the chase, he noticed a hole in the Status's windshield that was similar to the damage to the vehicle depicted in Exhibits Nine through Fifteen. In addition, one of the employees who was present during both the April 16, 2007 and July 19, 2007 robberies testified that the robber's voice "sounded like the same one from the first" robbery. Tr. p. 254.

With respect to the theft of the truck, the salesman testified that the truck that he showed Study was the truck that was depicted in Exhibits Thirty-four through Thirty-seven. The salesman also testified that the truck had just arrived at the dealership and Study was the only potential customer to see the vehicle.

With respect to the September 19, 2007 robbery, bank employees described the gun that was wielded by the robber as being the same as or very similar to Exhibit Thirty. One described the jacket worn by the robber as being the same as or similar to Exhibit Eighty-two. This employee further testified that the trash cans recovered from Study's property looked similar to the trash cans placed in employee work spaces by the bank. Bank employees also indicated that the truck in which the robber drove away from the bank appeared to be the same as or similar to the truck depicted in Exhibit Thirty-five.

*I. Facts Relating to the Jury's Verdict and Sentencing*

11

Following the conclusion of the presentation of evidence, the jury found Study guilty of four counts of Class B felony robbery, six counts of Class B felony criminal confinement, one count of Class D felony resisting law enforcement, and one count of Class D felony auto theft. The jury found that Study was not guilty of Class D felony pointing a firearm. The jury subsequently determined that Study was a habitual offender. On May 29, 2013, the trial court sentenced Study to an aggregate term of sixty-eight-and-one-half years imprisonment. This appeal follows.

**DISCUSSION AND DECISION**

On appeal, Study contends (1) that the trial court erred in denying his request to sever the charges and order separate trials; (2) that the trial court abused its discretion in denying his request to dismiss the charge relating to the March 21, 2006 robbery; (3) that the trial court abused its discretion in admitting certain evidence at trial; and (4) that the trial court erred in entering separate convictions for the related robbery and criminal confinement charges. We will address each contention in turn.

### I. Whether the Trial Court Erred in Denying Study's Request to Sever the Charges and Order Separate Trials

Study contends that the trial court erred when it denied his request for severance of the charges. In ruling on such a request, the trial court is guided by statute. Indiana Code section 35-34-1-9(a) provides:

> Two (2) or more offenses may be joined in the same indictment or information, with each offense stated in a separate count, when the offenses: (1) are of the same or similar character, even if not part of a single scheme or plan; or (2) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan.

12

However, Indiana Code section 35-34-1-11(a) provides:

> Whenever two (2) or more offenses have been joined for trial in the same indictment or information solely on the ground that they are of the same or similar character, the defendant shall have a right to severance of the offenses. In all other cases the court, upon motion of the defendant or the prosecutor, shall grant a severance of offenses whenever the court determines that severance is appropriate to promote a fair determination of the defendant's guilt or innocence of each offense considering:
> (1) the number of offenses charged;
> (2) the complexity of the evidence to be offered; and
> (3) whether the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.

Thus, when two or more charges are joined for trial solely because they are of the same or similar character, the defendant is entitled to severance as a matter of right. *See Pardo v. State*, 585 N.E.2d 692, 693 (Ind. Ct. App. 1992). We review arguments that the trial court improperly denied a motion to sever as a matter of right de novo. *Booker v. State*, 790 N.E.2d 491, 494 (Ind. Ct. App. 2003), *trans. denied*.

To show the charges were not joined solely because they were of the same or similar character, the State may show that the charges contain a common modus operandi, thus establishing that the charges were joined because they were the work of the same person. *Id*. "Modus operandi refers to a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer." *Craig v. State*, 730 N.E.2d 1262, 1265 n.1 (Ind. 2000) (internal quotation omitted). If the court determines that the defendant was not entitled to severance as a matter of right, the decision of whether to sever the charges is committed to the trial court's discretion, and we will reverse only for an abuse of that

discretion. *See id*. "An abuse of discretion occurs where the decision is clearly against the logic and effect of the facts and circumstances." *Ziebell v. State*, 788 N.E.2d 902, 908 (Ind. Ct. App. 2003) (internal quotation omitted).

In arguing that the trial court erroneously denied his motion for a severance of the charges, Study first claims that he was entitled to a severance as a matter of right. Alternatively, Study claims that even if he was not entitled to a severance as a matter of right, the trial court abused its discretion in denying his request for a severance. We note that Study concedes that the various charges relating to each individual robbery could properly be tried together. Study also concedes that the auto theft charge could properly be tried with the charge relating to the September 19, 2007 robbery because the truck at issue in the auto theft charge was used in connection to the commission of that robbery. Study, however, argues that he should have been granted four separate trials, *i.e.*, one trial for the charges stemming from each individual robbery.

**A. Severance as a Matter of Right**

Study claims that he was entitled to severance as a matter of right. In making this claim, Study points to the fact that the four robberies occurred on different dates, multiple months apart, at two different locations. One location was located in southern Boone County and the other in western Boone County. Further, Study claims that although the perpetrator wore a mask in all four robberies, it is not uncommon for a bank robber to try to conceal his identity.

Study relies on this court's decision in *Pardo* for support for his claim that he was

14

entitled to severance as a matter of right. In *Pardo*, the defendant was charged with multiple counts relating to four thefts that occurred in September of 1989 and an attempted theft in November of 1989. 585 N.E.2d at 692. Upon review, this court determined that the record lacked any evidence that the September thefts and the November attempted theft constituted a series of acts connected together or parts of a single scheme or plan, and that the charges were joined for trial simply because the offenses were of the same or similar character. *Id.* at 695. Thus, the defendant was entitled to separate trials, one for the September offenses and one for the November offense. *Id.*

However, upon review, we conclude that unlike in *Pardo*, the charges relating to the four separate robberies were not joined at trial simply because the offenses were of the same or similar character. Again, to show the charges were not joined only because they were of the same or similar character, the State may show that the charges contain a common modus operandi, thus establishing that the charges were joined because they were the work of the same person. *See Booker*, 790 N.E.2d at 494. We believe the State has successfully done so here.

The evidence relating to each of the four robberies reveal a pattern of criminal behavior so distinctive that separate crimes are recognizable as the handiwork of the same wrongdoer, *i.e.*, a common modus operandi. *See Craig*, 730 N.E.2d at 1265 n.1. In each of the four robberies, the perpetrator was dressed exactly the same, wearing a ski mask, a green Carhartt-style jacket, blue jeans, work boots, and gloves. The perpetrator was also armed with a gun that was at least partially silver in color during each of the robberies. Upon

15

entering the bank, the perpetrator went behind the teller line and forced bank employees to place money in a trash can that he picked up from behind the teller line. The perpetrator also demanded that the money not include dye packs, straps, or bait money. In two of the robberies, the perpetrator forced the employees down on the floor. In the other two, he forced the employees into the vault.

Moreover, the State argued and the trial court recognized additional reasons for trying all of the charges in a single trial. These additional reasons included concerns for judicial economy, the fact that the crimes all appeared to be part of a common scheme and plan, the overlap of evidence and witnesses who would be called to testify regarding each of the robberies and the actions taken by officials after each of the robberies, and the public interest in concluding judicial matters in a reasonably expeditious fashion.

Upon review, we determine that the above-stated additional reasons for trying the charges together in one trial coupled with the common modus operandi used in each of the robberies demonstrates that the charges were not joined solely because they were of the same or similar character. As such, we conclude that Study has failed to demonstrate that he was entitled to severance as a matter of right.

### B. Discretionary Denial of Severance

Alternatively, Study argues that the trial court abused its discretion in denying his request for a severance because the facts relating to the four separate robberies were so confusing such to warrant four separate trials. We disagree. During trial, various witnesses testified about each of the robberies as well as the auto theft and the actions that led to

16

Study's arrest. As for the robberies, each witness was clear in his or her testimony as to which robbery his or her testimony related to. The same is true for the testimony relating to the theft of the truck. Further, the testimony regarding police action following the robberies and the theft was the same for each of the charges.

Study has failed to make a showing that the alleged complexity of the evidence rendered the jury incapable of rendering a fair verdict or that he was prejudiced by the joinder of the charges. As such, we conclude that the trial court did not abuse its discretion in denying Study's motion to sever.

## II. Whether the Trial Court Erred in Denying Study's Request to Dismiss the Charge Relating to the March 21, 2006 Robbery

Study next contends that the trial court erred in denying his motion to dismiss because the prosecution of the charge relating to the March 21, 2006 robbery was barred by the five-year period of limitation set forth in Indiana Code section 35-41-4-2. We review a trial court's ruling on a motion to dismiss a criminal charge for an abuse of discretion. *Reeves v. State*, 938 N.E.2d 10, 14 (Ind. Ct. App. 2010) (citing *State v. Lindsay*, 862 N.E.2d 314, 317 (Ind. Ct. App. 2007), *trans. denied*), *trans. denied*. "We will reverse a trial court's decision for an abuse of discretion where the court's decision is clearly against the logic and effect of the facts and circumstances." *Id*. (citing *Lindsay*, 862 N.E.2d at 317). When reviewing a motion to dismiss based on a statute of limitation, we have explained that:

> A statute of limitation is designed to insure against prejudice and injustice to a defendant which is occasioned by a delay in prosecution. *State v. Jones*, 783 N.E.2d 784, 786-87 (Ind. Ct. App. 2003). The limitation period seeks to strike a balance between a defendant's interest in being placed on notice so as to be able to formulate a defense for a crime charged and the State's interest in

having sufficient time to investigate and develop a case. *Id*. at 787. Any exception to the limitation period must be construed narrowly and in a light most favorable to the accused. *Id*.

*Lindsay*, 862 N.E.2d at 317. It is the State's burden to prove that the crime charged was committed within the statute of limitation. *Id*.

Indiana Code section 35-41-4-2(a) provides that "[e]xcept as otherwise provided by this section a prosecution for an offense is barred unless it is commenced: (1) within five (5) years after the commission of the offence in the case of a Class B … felony." However, Indiana Code section 35-41-4-2(h) provides that "[t]he period within which a prosecution must be commenced does not include any period in which: … (2) the accused person conceals evidence of the offense, and evidence sufficient to charge the person with that offense is unknown to the prosecuting authority and could not have been discovered by that authority by exercise of due diligence." In *Sloan v. State*, the Indiana Supreme Court noted that the language "conceals evidence of the offense" found in Indiana Code section 35-41-4-2(h)(2) was seemingly broader than its predecessor's language, which read "conceals the fact that the offense has been committed." 947 N.E.2d 917, 922 n.8 (Ind. 2011) (comparing Ind. Code § 35-41-4-2(h)(2) to its predecessor, Ind. Code § 35-1-3-5 (1976)). In noting the General Assembly's adoption of the arguably broader language, the Indiana Supreme Court further noted that "[i]t is arguable that the new language applies to concealment of any evidence, including evidence of guilt, and thus would toll the statute of limitations in any crime in which a defendant tries to avoid apprehension." *Id*. We agree with this interpretation, and accordingly conclude that the five-year statute of limitation may be tolled

18

by a defendant's concealment of any evidence, including evidence of guilt.

In arguing that the trial court did not abuse its discretion in denying Study's motion to dismiss the charge relating to the March 21, 2006 robbery, the State claims that the five-year statute of limitation was tolled from the date of the robbery until November 21, 2007, because Study had concealed both his identity and the evidence relating to the charged offense. Given the fact that concealment is a fact-intensive issue, where the State relies on this exception, "it must plead the circumstances of the concealment exception in the information so that the "defendant is apprised of the facts upon which the State intends to rely and may be prepared to meet that proof at trial." *Reeves*, 938 N.E.2d at 17 (internal quotation omitted).

With respect to the challenged charge, the State alleged concealment in the amended charging information. Specifically, the State alleged that Study concealed his identify by wearing a mask at the time of the offense. The State also alleged that Study concealed the white Dodge Status that he used to drive away after committing the robbery, the trash can that he used during the commission of the robbery and took from the bank, the clothing that he wore during the robbery, personal property that he took from one of the victims, and the weapon that he used during the commission of the offense. The State additionally alleged that Study concealed evidence relating to the other bank robberies which displayed a common modus operandi as the March 21, 2006 robbery. The State alleged that Study's act of concealing the above-stated evidence

> made it impossible for the prosecuting authority to identify [Study] as the offender in the bank robbery which occurred on March 21, 2006 until [Study]

19

was apprehended on November 21, 2007. Furthermore, evidence sufficient to charge [Study] with the offense charged herein was unknown to the prosecuting authority and could not have been and was not discovered by that authority by exercise of due diligence until [Study] was apprehended on November 21, 2007.

Appellant's App. pp. 137-38.

Upon review, we determine that the State's allegations in the charging information were sufficient to put Study on notice of the facts on which the State intended to rely on at trial. Study was made aware of the date of the charged offense and given a sufficient opportunity to prepare a defense for trial. As such, given our interpretation of the language adopted by the General Assembly in Indiana Code section 35-41-4-2(h)(2) relating to concealment coupled with the fact that the State sufficiently pled concealment in the amended charging information, we conclude that the trial court acted within its discretion in denying Study's motion to dismiss the charge relating to the March 21, 2006 robbery.

### III. Whether the Trial Court Abused Its Discretion in Admitting Certain Evidence at Trial

Study next contends that the trial court abused its discretion in admitting certain evidence at trial in violation of Indiana Evidence Rule 404(b).

> Our standard of review for rulings on the admissibility of evidence is essentially the same whether the challenge is made by a pre-trial motion to suppress or by an objection at trial. *Ackerman v. State*, 774 N.E.2d 970, 974-75 (Ind. Ct. App. 2002), *reh'g denied*, *trans. denied*. We do not reweigh the evidence, and we consider conflicting evidence most favorable to the trial court's ruling. *Collins v. State*, 822 N.E.2d 214, 218 (Ind. Ct. App. 2005), *trans. denied*. We also consider uncontroverted evidence in the defendant's favor. *Id.*

*Cole v. State*, 878 N.E.2d 882, 885 (Ind. Ct. App. 2007).

A trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003) (citing *Bradshaw v. State*, 759 N.E.2d 271, 273 (Ind. Ct. App. 2001)). Accordingly, we will reverse a trial court's ruling on the admissibility of evidence only when the trial court abused its discretion. *Id*. (citing *Bradshaw*, 759 N.E.2d at 273). An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Id*. (citing *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000)).

Study claims that the trial court abused its discretion in admitting evidence relating to an uncharged bank robbery and the theft of the motorhome which he was driving at the time of his arrest. Specifically, Study argues that the challenged evidence was evidence of other crimes, wrongs, or acts alleged to have been committed by Study, and, as a result, was admitted in violation of Evidence Rule 404(b).

> When addressing the admissibility of evidence under [Evidence] Rule 404(b), courts must utilize a two-prong analysis. *Scalissi v. State*, 759 N.E.2d 618, 623 (Ind. 2001). First, the court must assess whether the evidence has some relevancy to a matter at issue other than the defendant's propensity to commit the charged act. *Id*. Second, the court must weigh the probative value of the evidence against its prejudicial effect, pursuant to Evidence Rule 403. *Id*. We will reverse a trial court's determination of admissibility only for an abuse of discretion. *Id*.

*Wages v. State*, 863 N.E.2d 408, 410 (Ind. Ct. App. 2007).

"Evidence Rule 404(b) was designed to assure that 'the State, relying upon evidence of uncharged misconduct, may not punish a person for his character.'" *Lee v. State*, 689 N.E.2d 435, 439 (Ind. 1997) (quoting *Wickizer v. State*, 626 N.E.2d 795, 797 (Ind. 1993)).

21

Evidence Rule 404(b)(1) provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Ind. Evid. R. 404(b)(2). In addition, "'[e]vidence of happenings near in time and place that complete the story of the crime is admissible even if it tends to establish the commission of other crimes not included among those being prosecuted.'" *Wages*, 863 N.E.2d at 411 (quoting *Bocko v. State*, 769 N.E.2d 658, 664-65 (Ind. Ct. App. 2002), *trans. denied*).

## A. Evidence Relating to an Uncharged Bank Robbery

Study claims that the trial court abused its discretion in admitting evidence relating to the January 20, 2006 robbery of a Charter One bank branch. Study argues that the evidence of the January 20, 2006 robbery was evidence of an uncharged robbery that, at most, could be admitted to show that he had a propensity to commit bank robberies. For its part, the State argues that the evidence relating to the January 20, 2006 robbery was properly admitted because it was admitted not for the purpose of proving that Study acted in accordance with his character but rather because it was probative of Study's identity as the perpetrator. The State also argues that the evidence relating to the January 20, 2006 robbery was relevant to explain how Study came up with the modus operendi used in the four charged robberies.

During the January 20, 2006 robbery, the perpetrator dressed in clothing similar to that worn by Study during the commission of the four charged robberies and wielded a gun

22

similar to the gun wielded by Study during the commission of the four charged robberies. In addition, following the January 20, 2006 robbery, the perpetrator also drove away in a white vehicle similar to the white Dodge Stratus in which Study drove away from two of the charged robberies. Further, while it is of note that the perpetrator in the January 20, 2006 robbery did not specify that the money received not contain dye packs or place the money in a trash can, the State argues that the fact that the money received by the perpetrator did contain dye packs which exploded after the perpetrator took the money from the bank explains why Study was so concerned that the money received during the four charged robberies not contain dye packs. We agree with the State that this evidence is relevant to prove Study's identity and to provide an explanation for the modus operendi developed and used by Study during the commission of the charged robberies.

Moreover, even if it was error to admit the challenged evidence at trial, we conclude that such error was harmless.

> Errors in the admission of evidence ... are to be disregarded as harmless unless they affect the substantial rights of a party. Ind. Trial Rule 61; *Sparkman v. State*, 722 N.E.2d 1259, 1263 (Ind. Ct. App. 2000). In determining whether error in the introduction of evidence affected a defendant's substantial rights, we must assess the probable impact of the improperly admitted evidence upon the jury. *Id.* When there is substantial independent evidence of guilt such that it is unlikely that the erroneously admitted evidence played a role in the conviction or where the offending evidence is merely cumulative of other properly admitted evidence, the substantial rights of the party have not been affected, and we deem the error harmless. *Smith v. State*, 839 N.E.2d 780, 784 (Ind. Ct. App. 2005).

*Robertson v. State*, 877 N.E.2d 507, 514 (Ind. Ct. App. 2007); *see also Crocker v. State*, 989 N.E.2d 812, 822 (Ind. Ct. App. 2013), *trans. denied*.

23

The State presented substantial, independent evidence of Study's guilt during trial. This evidence included pictures of the vehicles used by Study in the commission of the crime, the clothing worn by Study during the commission of the robberies, the gun wielded by Study during the commission of the robberies, the window sticker for the stolen 2008 Ford F-350 pickup truck, and some of the trash cans taken from the banks during the robberies. In addition, Study was in possession of the key to the stolen truck at the time of his arrest. Police also recovered the purse, including some of the contents thereof, stolen during the July 19, 2007 robbery and various license plates, including Indiana plate 93T1720. Some of this evidence was recovered from property belonging to Study and Ridge and was intermixed with personal identification evidence belonging to Study and Ridge. The other evidence was recovered from the motorhome which Study was driving at the time of his arrest. In addition, the State also presented the testimony of numerous witnesses at trial, all of whom consistently testified to Study's actions during the robberies. These witnesses also gave consistent descriptions of Study's clothing and the gun wielded by Study. In light of the substantial independent evidence of Study's guilt, we conclude that the admission of the challenged evidence was at most harmless. As such, we further conclude that the trial court did not abuse its discretion in admitting the challenged evidence at trial.

## B. Evidence Relating to the Motorhome

Study also claims that the trial court abused its discretion in admitting evidence that the motorhome which he was driving at the time of his arrest was stolen. With respect to the motorhome, Study argues that it was irrelevant that the motorhome was stolen because the

State was capable of showing that Study was in possession of the motorhome and its contents without disclosing that it was stolen. For its part, the State argues that the evidence indicating that the motorhome was stolen was properly admitted because it helped complete the story relating to Study's commission of the charged crimes.

During trial, the trial court allowed the State to present evidence that the motorhome was stolen from Pontiac R-V Sales in Livingston County, Illinois, which was located a few miles from where Study abandoned the stolen 2008 Ford F-350 Super-Duty pickup truck. We believe that this evidence was admissible because it was relevant to complete the story of the charged crimes. At some point following the commission of the September 19, 2007 robbery, Study fled Indiana. He was subsequently arrested following a police chase in Florida. Study was driving the motorhome at the time of his arrest. Study was in possession of the key to the stolen truck at the time of his arrest. In addition, during a search incident to Study's arrest, officers recovered a green Carhartt jacket and at least some of the contents of the purse that was taken from the bank employee during the July 19, 2007 robbery, including a wallet, a cellular phone, and other personal items, from the motorhome. Police also recovered numerous license plates, including Indiana plate 93T1720. The fact that the motorhome was stolen from a dealership that was located a few miles from where the stolen truck was ultimately recovered is relevant to complete the story relating to the charged offenses and to explain why police officers from Illinois were present at the time of Study's arrest and testified during Study's trial. As such, we conclude that the trial court did not abuse its discretion in admitting the challenged evidence at trial.

25

## IV. Whether the Trial Court Erred in Entering Separate Convictions for the Related Robbery and Criminal Confinement Charges

Study also contends that the trial court erred in entering separate convictions for the related robbery and criminal confinement charges. He argues that the confinement was part of the robbery and therefore the trial court simultaneously charged him for an offense and a lesser-included offense in violation of Indiana Code section 35-38-1-6. Indiana Code section 35-38-1-6 provides that "[w]henever: (1) a defendant is charged with an offense and an included offense in separate counts; and (2) the defendant is found guilty of both counts; judgment and sentence may not be entered against the defendant for the included offense."

Robbery consists of taking property from another person "(1) by using or threatening the use of force on any person; or (2) by putting any person in fear." Ind. Code § 35-42-5-1. Criminal confinement consists of "(1) confin[ing] another person without the other person's consent; or (2) remov[ing] another person by fraud, enticement, force, or threat of force from one (1) place to another." Ind. Code § 35-42-3-3. "Confinement is not a lesser-included offense of robbery." *Hopkins v. State*, 759 N.E.2d 633, 639 (Ind. 2001). Furthermore, where the confinement of a victim is greater than that which is inherently necessary to rob the victim, the confinement, while part of the robbery, is also a separate criminal transgression. *Id.* at 639 (citing *Harris v. State*, 716 N.E.2d 406, 412 (Ind. 1999)).

In *Hopkins*, the Indiana Supreme Court upheld the defendant's robbery and confinement convictions, finding that the defendant's confinement of his victims "extended well beyond what was necessary to rob them." *Id.* at 640. Defendant forced his victims into

26

a basement at gunpoint and took money from them before going upstairs to search the residence. *Id.* The Indiana Supreme Court determined that it was not necessary to force the victims into the basement to rob them. *Id.* The Indiana Supreme Court further determined that after initially taking the money, it was not necessary for the defendant to force his victims to stay in the basement as he searched the residence. *Id.* Thus, the Indiana Supreme Court concluded that both the defendant's removal of the victims to the basement and the confinement after robbing them were separate criminal transgression from the robberies themselves. *Id.*

In the instant matter, Study's confinement of the bank employees during both the April 16, 2007 and July 19, 2007 robberies extended beyond what was necessary to rob the bank. During both robberies, Study ordered the employees into the vault at gunpoint after taking the money in each of the teller's drawers. Study then took additional money from the vault. Arguably, Study's actions up to this point were necessary to rob the bank. However, in both instances, after taking money from the vault, Study continued to confine the employees in the vault. After taking the money, Study ordered the employees to stay in the vault after the completion of the robbery. Study also shut the vault door, effectively shutting them in the vault. During the April 16, 2007 robbery, Study even attempted to lock the employees in the vault. Like the confinement of the victims in *Hopkins*, Study's confinement of the employees in the vault during both robberies constituted separate criminal acts as the confinements went beyond what was necessary for Study to complete the robberies. *See id.* Accordingly, we conclude that the trial court did not err in this regard.

27

**CONCLUSION**

In sum, we conclude that (1) the trial court did not err in denying Study's request to sever the charges and order separate trials, (2) the trial court did not abuse its discretion in denying Study's request to dismiss the charge relating to the March 21, 2006 robbery, (3) the trial court did not abuse its discretion in admitting the challenged evidence at trial, and (4) the trial court did not err in entering separate convictions for the related robbery and criminal confinement charges. Accordingly, we affirm the judgment of the trial court.

The judgment of the trial court is affirmed.

PYLE, J., concurs.

MATHIAS, J., concurs in part and dissents in part with opinion.

# IN THE
# COURT OF APPEALS OF INDIANA

JOHN ORVILLE STUDY,         )
                                 )
     Appellant-Defendant,   )
                                 )
       vs.                 )     No. 06A04-1308-CR-391
                                 )
STATE OF INDIANA,         )
                                 )
     Appellee-Plaintiff.    )

**MATHIAS, Judge concurring in parts and dissenting in part**

I concur in all parts of the majority opinion except that portion holding that the applicable statute of limitations had been tolled as to the March 21, 2006 robbery.

The applicable statute of limitations, found in Indiana Code section 35-41-4-2(a)(1), provides that "a prosecution for an offense is barred unless it is commenced . . . within five (5) years after the *commission* of the offense, in the case of a Class B, Class C, or Class D felony[.]" (emphasis added). It is undisputed that, in the present case, the State did not file charges regarding the March 21, 2006 robbery until after more than five years had elapsed since the robbery.

The State argues, and the majority agrees, that the limitations period was tolled by operation of Section 35-41-4-2(h)(2), which states that "[t]he period within which a prosecution must be commenced does not include any period in which . . . the accused person *conceals evidence of the offense*, and evidence sufficient to charge the person with that offense is unknown to the prosecuting

29

authority and could not have been discovered by that authority by exercise of due diligence[.]" (emphasis added). The majority accepts the State's position that this tolling provision is applicable any concealment of evidence, including evidence of guilt.

Our case law, however, has long held that the statute of limitations is tolled by concealment only when there is a positive act performed by the defendant calculated to prevent discovery of the fact that a crime has been committed. Reeves v. State, 938 N.E.2d 10, 17 (Ind. Ct. App. 2010); Sipe v. State, 797 N.E.2d 336, 340 (Ind. Ct. App. 2003); Kifer v. State, 740 N.E.2d 586, 587 (Ind. Ct. App. 2000); State v. Chrzan, 693 N.E.2d 566, 567 (Ind. Ct. App. 1998); Umfleet v. State, 556 N.E.2d 339, 341 (Ind. Ct. App. 1990), trans. denied; see also Crider v. State, 531 N.E.2d 1151, 1154 (Ind. 1988) (concluding that statute of limitations was tolled where defendant concealed the facts of his crimes by his positive acts of intimidation of his victims).

In support of its position to the contrary, the majority cites to Sloan v. State, 947 N.E.2d 917 (Ind. 2011). In that case, our supreme court did note that the use of the phrase "conceals evidence of the offense" in our current statute of limitations seemed broader that the language of the predecessor statute, which required concealment of "the fact that the offense has been committed." Id. at 922 n.8 (quoting Ind. Code § 35-1-3-5 (1976)). Decisions from this court, however, have assigned no significance to this change and have held that, to constitute concealment, "'there must be a positive act performed by the defendant calculated to prevent discovery *of the fact that a crime has been committed.*'" Id. (quoting Sipe v. State, 797 N.E.2d 336, 340 (Ind. Ct. App. 2003)). The court then wrote:

> It is arguable that the new language applies to concealment of any evidence, including evidence of guilt, and thus would toll the statute of limitations in any crime in which a defendant tries to avoid apprehension. *Because concealment is not an issue in this case, we leave this question for another day.*

30

Id. (emphasis supplied).

Accordingly, this portion of the Sloan opinion is *obiter dicta* and not binding on this court. Since our case law has long held a contrary position, I do not think it necessary to abandon our long-standing precedent in the light of *dicta* contained in a footnote. The majority nevertheless disagrees with our precedent and instead agrees with the State that the statute of limitations is tolled in any crime in which a defendant tries to avoid apprehension. I respectfully disagree.

I start with the premise that exceptions to statutes of limitations must be construed narrowly and in a light most favorable to the accused. Sloan, 947 N.E.2d at 922. To construe the tolling provision of the statute of limitations so broadly as to include any case in which a defendant tries to avoid apprehension effectively lets the exception swallow the rule. Indeed, it is hard to conceive of a crime in which the culprit does *not* attempt to avoid apprehension. It is a rare case indeed where the culprit actively turns himself in to the authorities immediately after commission of the crime. Under the majority's reading, any time a defendant attempts to avoid arrest, the statute of limitations is tolled. If this is the case, our criminal statutes of limitation are pointless and can be ignored.

The purpose of the statute of limitations in criminal law is "to protect defendants from the prejudice that a delay in prosecution could bring, such as fading memories and stale evidence." Id. at 920. Limitations statutes "strike[ ] a balance between an individual's interest in repose and the State's interest in having sufficient time to investigate and build its case." Id. Our legislature has made the public-policy choice of setting a five-year statute of limitations for Class B, Class C, and Class D felonies. To read the concealment portion of the tolling provision as broadly as does the majority vitiates this public policy in all but very few crimes, leaving us with an effectively meaningless statute of limitations.

Until our supreme court directly holds that concealment includes the mere act of avoiding apprehension, I would continue to hold, as a long line of cases currently holds, that concealment tolls the statute of limitations only when the accused performs a positive act calculated to prevent discovery of the fact that a crime has been committed. This is not what happened in this case, as the fact that the bank had been robbed on March 21, 2006 was well known. Thus, the statute of limitations ran on March 21, 2011, and the State did not file charges for this robbery until August 20, 2012, well after the statute of limitations had run.

Accordingly, I believe that the trial court should have granted Study's motion to dismiss the charge stemming from the March 21, 2006 robbery, and I respectfully dissent from the majority's holding to the contrary.