Chad W. **BREITWEISER,**
Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 52A02–9806–CR–545.

Court of Appeals of Indiana.

Jan. 22, 1999.

---

Andrew C. Maternowski, Indianapolis, for Appellant–Defendant.

Jeffrey A. Modisett, Attorney General, Priscilla J. Fossum, Deputy Attorney General, Indianapolis, for Appellee–Plaintiff.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Chad Breitweiser appeals his convictions of possession of marijuana and maintaining a common nuisance. The sole issue raised on appeal is whether the trial court erred in denying Breitweiser's motion to suppress evidence seized during the execution of a search warrant at his residence.

We affirm.

### FACTS

On February 25, 1997, police officers of the Peru Police Department went before the judge of the Miami Circuit Court, requesting that a search warrant be issued for a residence located at 382 East Main Street in Peru, Indiana. In support of the application for the search warrant, Indiana State Police Crime Scene Technician Dean Marks, who has had more than fifteen years experience identifying marijuana, testified at the hearing as follows:

Q And we will go through these one at a time, first of all as to 382 East Main, were you involved in [t]he trash pick up there?

A Yes.

Q On what dates?

A 2–10 of '97.

Q And as to the substance then found in the trash at that location, what if any marijuana or substances you thought to be marijuana were found there?

A Yes, there was remnants of plant like fragments found in the trash, along with mailing miscellaneous personal papers with names of Tama and Chad Breitweiser.

Q And did you send the items that you thought to be marijuana to the Indiana State Police Lab?

A Yes, I did.

Q And you have received lab results back on that?

A Yes, they c[a]me back showing positive for marijuana.

Q Then did you again pick up the trash from that location on February 17th of 1997?

A Yes.

Q And what, if anything, did you find in the trash on that date?

A Again found plant fragments, what appeared to be possible marijuana in [t]he trash.

Q In this particular situation did you find . . . a pretty large quantity?

A Yes we did.

Q How large a quantity was it?

A Numerous stems ranging in size up to possibly six, eight inches long stuffed in a cereal box.

Q And on, based on your visual examination of the trash on February 17, 1997 do you have an opinion as to whether or not there was marijuana in the trash on that date?

A Yes, my opinion, I believe it to be marijuana.

Q And are you familiar with how that location 382 East Main was selected . . . why was 382 East Main selected

A An anonymous source.

(R. 21–22). Based on this information, the judge issued a warrant authorizing a search of the residence for "marijuana and/or paraphernalia and/or sales records pertaining to illegal drug activity." (R. 18).

The police executed the search warrant at the residence on February 28, three days after the warrant was issued. During the search, police seized thirty-nine live marijuana plants, a hand-rolled cigarette containing marijuana, timers, lights, a $CO_2$ tank, fertilizer, a brass pipe, marijuana seeds and other drug paraphernalia. Breitweiser, who lived at the residence, was present during the search.

The State charged Breitweiser with possession of marijuana and maintaining a common nuisance, both class D felonies. Prior to trial, Breitweiser filed a motion to suppress, asserting that the information supporting the search warrant was too stale to support a finding of probable cause. The trial court denied the motion, expressly finding that "[i]t is not unreasonable to conclude that, because marijuana was found on February 10 and February 17, 1997 that marijuana would also be present in the home at the time the warrant was issued on February 25, 1997." (R. 36). Breitweiser was subsequently convicted as charged.

## DECISION

Breitweiser contends that the search of his residence was in violation of both the federal and state constitutions because the search warrant was issued without a showing of probable cause. Specifically, he argues that because there was an eight-day period between when the police last recovered marijuana plant fragments from his trash and the issuance of the warrant, the information obtained by the officers was stale and did not constitute probable cause. We disagree.

■ The Fourth Amendment to the United States Constitution and Article I, § 11 of the Indiana Constitution both require probable cause for the issuance of a search warrant and the exclusion of evidence obtained due to an illegal search or seizure. *Figert v. State*, 686 N.E.2d 827, 833 n. 1 (Ind.1997).

■ In determining whether to issue a search warrant, "[t]he task of the issuing magistrate [or judge] is simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit [or testimony], there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Jaggers v. State*, 687 N.E.2d 180, 181 (Ind.1997) (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)). The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for determining that probable cause existed. *Id.* " '[S]ubstantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination' of probable cause."

*Id.* at 181–82 (quoting *Houser v. State,* 678 N.E.2d 95, 99 (Ind.1997)). The "reviewing court" for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. *Id.* at 182. In this review, we consider only the evidence presented to the issuing judge or magistrate "and not *post hac* justifications for the search." *Id.*

■ It is a fundamental principle of search and seizure law that the information given to the magistrate or judge in the application for a search warrant must be timely. *See Sgro v. United States,* 287 U.S. 206, 210, 212, 53 S.Ct. 138, 140–141, 77 L.Ed. 260 (1932); *Raymer v. State,* 482 N.E.2d 253, 255 (Ind. 1985)("Stale information only gives rise to a mere suspicion and not a reasonable belief, especially when the items to be obtained in a search are easily concealed and moved."). Accordingly, probable cause must be found to exist at the time the warrant issues, and the facts in support of the warrant must be so close to the time of the issue of the warrant as to justify a finding of probable cause at that time. *Sgro,* 287 U.S. at 210, 53 S.Ct. at 140.

■ While it is true that the age of the information supporting the application for a warrant can be a critical factor when determining whether there is probable cause, our courts have not established a precise rule as to how much time may elapse between the obtaining of the facts upon which the search warrant is based and the issuance of the warrant. *Moran v. State,* 644 N.E.2d 536, 542 (Ind.1994). Accordingly, probable cause is not determined by merely counting the number of days between the occurrence of the facts relied upon and the warrant's issuance. *See* 2 Wayne R. LaFave, CRIMINAL PROCEDURE § 3.7 (3rd Ed.1996). Instead, the staleness of the information must be judged by the facts and circumstances of each case. *Armstrong v. State,* 429 N.E.2d 647, 651 (Ind.1982).

Numerous Indiana cases have addressed the alleged staleness of facts shown as probable cause in an application for a search warrant. For example, in *Ashley v. State,* 251 Ind. 359, 241 N.E.2d 264 (1968), a search warrant to search a house for marijuana was issued on October 11. The search warrant was based on affidavits from officers alleging, in pertinent part, that an informant obtained marijuana from the residence on October 3. The Court stated:

> Although there can be no precise rule as to how much time may intervene between the obtaining of the facts and the issuance of the search warrant, in dealing with a substance like marijuana, which can be easily concealed and moved about, probable cause to believe that it was in a certain building on the third of the month is not probable cause to believe that it will be in the same building eight days later.

*Id.* at 269.

In *Blalock v. State,* 483 N.E.2d 439, 444 (Ind.1985), officers flew over Blalock's greenhouse and observed dark green plants of varying heights arranged in rows on August 19, 1983. Although unable to discern the number and shape of the leaves on the plants, the officers concluded marijuana was being grown inside the greenhouse based on the security precautions, the remoteness of the area, and the color of the plants. Two days later, another officer trained in marijuana identification flew over the greenhouse and concluded that the greenhouse was being used for marijuana production. The officers compared their opinions, and on August 23, a search warrant was issued.

On appeal, the defendant maintained that the delay in issuing the search warrant was excessive. *Id.* at 444. Our supreme court held that time periods of four days and two days between officers' respective observations and the issuance of the search warrant were not so excessive as to invalidate the warrant where the defendant made no showing that the marijuana growing in the greenhouse at issue could be expected to be moved within that time span. *Id.*

In *Bigler v. State,* 602 N.E.2d 509, 516 (Ind.Ct.App.1992), the facts alleged in the probable cause affidavit established an ongoing operation lasting at least two years, the last known act of distribution having occurred twenty-one days before the officers sought the warrant. The officers sought the warrant to search for evidence that would

prove that distribution of amphetamines had been or was being committed. We stated that under such circumstances, the element of time loses significance and need not weigh heavily in the determination of probable cause for the issuance of the search warrant. *Id.* at 516. We then concluded that the affidavit provided a substantial basis for the magistrate's conclusion that evidence of an amphetamine distribution scheme was probably present in Bigler's residence. *Id.*

Finally, in *Moran v. State,* 644 N.E.2d 536 (Ind.1994), a search warrant was issued on April 20, 1992 and executed on April 22. At the time the search warrant was executed, the most recently acquired evidence was nearly two weeks old and the more crucial evidence was over six months old. During this period, officers were tracking a marijuana growing operation. According to the affidavit, marijuana crops grow in ninety day cycles, and based thereon there was reason to believe that growing activities were ongoing over a protracted amount of time. The Court noted that marijuana can be expected in the natural course of events to be smoked or moved into commercial channels. *Id.* at 542. Although the State did not seek to support the timeliness of its information by adding the words "continuous criminal activity" to its affidavit, the Court found that the facts in the affidavit permitted the conclusion of an ongoing growing enterprise and not merely the conclusion that small amounts of marijuana were present in a building for personal use or sale. *Id.* at 542. Under these circumstances, the supreme court concluded that the trial court erred in determining that probable cause did not exist for the issuance of the search warrant. *Id.*

◼ As the foregoing cases suggest, the character of the criminal activity under investigation is an important factor to consider when determining whether contraband or the evidence of a crime is still in a particular place. Where an affidavit merely recites an isolated crime, as in *Ashley,* time between the occurrence and the issuance of the war-

rant will likely be crucial to a determination of probable cause. However, where the affidavit or testimony recites criminal activity of a protracted or continuous nature, as in *Moran* and *Bigler,* such time is of less significance. *See U.S. v. Lamon,* 930 F.2d 1183, 1188 (7th Cir.1991).

◼ In the present case, officers began to investigate drug activity at Breitweiser's residence after receiving information from an anonymous source. A garbage pickup on February 10 confirmed officers' suspicions of drug activity at the residence after they discovered plant-like fragments subsequently determined to be marijuana in Breitweiser's trash. A week later, on February 17, the police again found evidence of drug activity. Specifically, Officer Marks testified that he discovered what he believed to be numerous marijuana stems up to six to eight inches in length stuffed in a cereal box during the search of Breitweiser's trash.

The trial court determined, based on these facts, that "[i]t is not unreasonable to conclude that, because marijuana was found on February 10 and February 17, 1997 that marijuana would also be present in the home at the time the warrant was issue on February 25, 1997." (R. 36). Under the circumstances set forth in the probable cause hearing, we find that such reasoning by the trial court was a proper approach which a probable cause determination requires. *See Jaggers,* 687 N.E.2d at 181. The quantity and size of the fragments of marijuana plants and the repeated evidence of drug activity suggests habituating and continuing use of marijuana at the residence.[1] This same evidence also suggests that ongoing marijuana cultivation at the residence. Both activities constitute crimes of a protracted and continuing nature. In keeping with our deference to a magistrate's or trial court's determination of probable cause, we conclude that there was a substantial basis for the trial court's determining that probable cause existed under the facts of this case.[2]

---

[1]. *See, i.e., State v. Johnson,* 531 N.W.2d 275 (N.D.1995) ("Drug use can be a habituating and continuing offense.").

[2]. Breitweiser argues that *Ashley* compels reversal of this case. However, *Ashley* is readily distinguishable from the facts of this case. First, the affidavits in *Ashley* merely recited a single,

Alternatively, Breitweiser alleges that even if probable cause existed when the search warrant was issued, any probable cause had dissipated by the time police executed the search warrant three days later. Breitweiser recognizes that Ind.Code § 35-33-5-7(b) only obligates law enforcement officers to execute a search warrant within ten days after the date of issuance, but argues that the statute "does not establish that the warrant is still valid when the information used to obtain the search warrant turns stale, or, that because of the staleness caused by the delay in execution or from receipt of the facts to the issuance of the warrant, that the search was still reasonable." Appellate's Brief, p. 9. As noted above, however, testimony at the hearing permitted the reasonable inference that a marijuana cultivation operation existed at Breitweiser's residence. Breitweiser points to nothing, other than the passage of three days during the period between the issuance and execution of the search warrant, which affected the facts which gave police probable cause to search his home. We conclude that the initial probable cause supporting the issuance of the search warrant continued to exist at the time of the search, despite the three-day delay in its execution.

In conclusion, the judge properly issued a search warrant upon a showing of probable cause, and the officer's subsequent execution of the warrant was timely. Accordingly, the trial court properly denied Breitweiser's motion to suppress.[3]

We affirm.

RUCKER, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur in the affirmance of the denial of Breitweiser's motion to suppress. In doing so, however, I would make two additional observations.

In the context of our criminal law, I.C. 35-48-1-19 defines marijuana as "any part of the plant ... [but] does not include the mature stalks of the plant".

The word "stem" is most commonly defined as "the main central part (usually above the ground) of a tree or shrub or plant." OXFORD AMERICAN DICTIONARY 670 (1980). The word "stalk" is defined almost identically as "the main stem of a plant." *Id.* at 665. The similarity of these definitions is not new. WEBSTER'S INTERNATIONAL DICTIONARY 2453, 2468 (2d ed.1943) defines "stem" as "[t]he main axis, trunk, or body of a tree or other plant" and "stalk" as "[t]he stem or main axis of a plant." The words are therefore synonymous.

In the instant case, Dean Marks, crime scene technician for the Indiana State Police, testified that police found "plant fragments" in a search of the defendant's trash on February 17, 1997. 704 N.E.2d at 497–498. It appears that the fragments mentioned were "numerous stems." *Id.* Thus, the defendant could have argued on appeal that the trial court improperly based its probable cause finding upon the discovery by police of plant material which did not legally constitute marijuana.

Be that as it may, appellant made no argument to this effect, and it is therefore not a factor which invalidates the issuance of the search warrant at issue. Furthermore, it could be argued that discovery of a part of a marijuana plant which is itself not marijuana might nevertheless permit a reasonable court

---

isolated drug transaction at the residence whereas the alleged facts in the present case revealed repeated drug activity over a period of time. Further, the affidavits in *Ashley* merely led to the conclusion that small amounts of marijuana were present in the residence for personal use or sale whereas the facts in the present case permitted the conclusion that there was ongoing marijuana cultivation at the residence. Finally, the officers in *Ashley* merely sought the warrant to search for marijuana whereas the officers in the present case sought a warrant to search not only for marijuana but also for paraphernalia and

sales records pertaining to illegal drug activity. Thus, *Ashley* does not address the issue of staleness when evidence regarding drug paraphernalia and evidence of drug sales are also sought.

3. Because we find that the information presented to the judge was sufficient to support the judge's finding of probable cause to issue the search warrant, we need not address the parties' arguments concerning whether the good faith exception applies.

to conclude that probable cause exists to believe that marijuana itself will be found at the site where the stalk was found.

With regard to the standard of review in such matters, it is appropriate to set forth the "deference test" set forth in *Houser v. State* (1997) Ind., 678 N.E.2d 95, 99. Here, as in *Houser*, the first reviewing court affirmed the issuance of the warrant. Upon review, therefore, we also give deference to the original probable cause determination.

It may well be quite different if the first review results in the grant of a motion to suppress and therefore effectively invalidates the issuance of the warrant. In this latter instance, we may well be required to afford a degree of deference to the conclusions reached by the reviewing court. However, that issue is for another day.

I concur in the affirmance of the trial court's suppression ruling and in the affirmance of the conviction.