## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 12 2018, 10:04 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Blair Todd
Law Office of Blair Todd
Winamac, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Laura R. Anderson
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Troy Bell,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

June 12, 2018

Court of Appeals Case No.
75A03-1710-CR-2554

Appeal from the Starke Circuit Court

The Honorable Kim Hall, Judge

Trial Court Cause No.
75C01-1604-F2-4

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, Troy Bell was convicted of dealing in methamphetamine, a Level 2 felony; maintaining a common nuisance, a Level 6 felony; and possession of paraphernalia, a Class C Misdemeanor. Bell also pleaded guilty to possession of methamphetamine, a Level 3 felony, and the trial court sentenced Bell to an aggregate term of twenty-five years in the Indiana Department of Correction. Bell now appeals his convictions, raising only one issue for our review which we restate as whether the trial court abused its discretion in admitting evidence. Concluding the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] At approximately 9:00 a.m. on April 14, 2016, Detective Robert Olejniczak of the Starke County Sheriff's Office, in the company of other officers, executed a search warrant on the residence Bell shared with his wife, Natasha. Among other evidence, the search warrant produced:

> dime-sized bags with white residue, a gold grinder with a green leafy substance in it, glass smoking devices, a television screen with live video surveillance of the outside of the residence, a scale with white residue on it, an unmarked pill bottle with a green leafy substance in it, and two plastic bags containing 223.35 grams of crystal methamphetamine. The total street value of the methamphetamine found in the two bags was approximately $23,000 to $24,000.

Brief of Appellee at 9-10.

[3] Thereafter, Bell was charged with dealing in methamphetamine, a Level 2 felony; possession of methamphetamine, a Level 3 felony; maintaining a common nuisance, a Level 6 felony, two counts of possession of a controlled substance, both Class A misdemeanors; possession of marijuana, a Class B misdemeanor; and possession of paraphernalia, a Class C misdemeanor.

[4] On September 21, 2016, Bell filed a motion to quash the search warrant and suppress evidence, alleging the search warrant lacked probable cause under Article 1, Section 11 of the Indiana Constitution and the Fourth Amendment of the United States Constitution. The affidavit of probable cause underlying the search warrant provided:

> Robert Olejniczak swears and affirms, under the penalties of perjury, that he believes and has good cause to believe that the following are facts and information relevant to the determination of the existence of probable cause for the issuance of a search warrant.
>
> 1. I am the Chief Detective with the Starke County Sheriff's Office.
>
> 2. I have received information from two different sources since September 2015 that Troy and Natasha Bell have been selling illegal drugs out of the residence located [in] Starke County, Indiana.
>
> 3. The information I received states that Troy goes to South Bend to pick up Heroin and also states that at

their residence it smells like they are cooking methamphetamine. It states that there is traffic in and out of the residence once Troy gets back.

4. My source stated, on one occasion Troy and Natasha were fighting outside and yelled "I gave you $500 to buy drugs, where are my drugs".

5. It is believed that Troy is involved with the Aryan Brotherhood.

6. I have personally seen subjects frequenting the residence but have not been able to stop any vehicles or subjects leaving.

7. On February 4, 2016, Starke County Probation drug tested Natasha Long and her results were positive for Methamphetamine.

8. On April 4, 2016, I conducted a trash pull from the residence. In the trash was several dime sized plastic bag [sic] with residue, glass smoking devices with residue, empty scale box, burnt foil, prescription pill bottles with Troy Bell's name, mail with Natasha Long [sic] name on it, 223 bullet, 22 bullet and a spent 45 round.

9. The pipes and a small plastic bag with residue were tested. It [sic] field tested positive for methamphetamine.

10. On April 6, 2016, I was advised by a neighbor that there has been traffic at the residence during the

night time hours. They stated that people are staying for only a few minutes and leaving.

11. Due to my training and experience this is known to be associated with a subject selling illegal narcotics.

12. On April 6, 2016, I also was contacted by Indiana State Police Officer Bikowski with the Bremen Post and he stated that he received information from Brian Collins that he has known Bell since he was a kid and he is a major drug dealer.

13. On April 7, 2016, I was advised that Natasha was on Probation and is possibly on Home Detention. I called Starke County Community Corrections and they advised me that she was on pretrial home detention.

14. On April 11, 2016, I conducted a second trash pull from the residence. In the trash was mail belonging to Troy Bell, two glass smoking pipes with residue, a light bulb with one end removed with white residue inside it, foil and a pen tube with white residue.

15. I then took the evidence to the jail and conducted field tests on the items. The items tested positive for Methamphetamine.

16. On April 13, 2016, I was contacted by Hamlet Officer Kholes. He stated that he received information that Natasha was packaging methamphetamine during the day and going to a hotel at night to manufacture it.

17. I believe that the statements of the Hamlet Officer Kholes, Starks County Probation, Indiana State Trooper Bikowski, and Brian Collins are truthful and creditable.

18. Under the totality of the circumstances I believe that probable cause exists to search the residence, . . ., burn pits, trash and curtilage located [in] Starke County, Indiana.

19. I respectfully request a search warrant be issued . . . .

Appellant's Appendix, Volume II at 30-31. After a hearing on October 10, 2016, the trial court denied Bell's motion.

[5] On July 25, 2017, Bell pleaded guilty to possession of methamphetamine, a Level 3 felony, in exchange for the State dismissing two counts of possession of a controlled substance, both Class A misdemeanors. During a jury trial on the remaining charges conducted on July 26-27, Bell objected to the introduction of the evidence found in the residence during the execution of the search warrant. Following the State's presentation of evidence, the trial court granted Bell's motion for judgment on the evidence regarding possession of marijuana, a Class B misdemeanor, but denied the same motion for maintaining a common nuisance, a Level 6 felony. At the conclusion of the trial, the jury found Bell guilty of dealing in methamphetamine, a Level 2 felony; maintaining a common nuisance, a Level 6 felony; and possession of paraphernalia, a Class C misdemeanor. The trial court later imposed an aggregate sentence of twenty-

five years to be executed in the Indiana Department of Correction.  Bell now appeals.

# Discussion and Decision

## I. Standard of Review

[6] Generally, we review a trial court's ruling on the admissibility of evidence for an abuse of discretion.  *McHenry v. State*, 820 N.E.2d 124, 128 (Ind. 2005). Where, as here, a search warrant was sought and granted, the search warrant is presumptively valid and the defendant bears the burden of overcoming such presumption.  *Jones v. State,* 783 N.E.2d 1132, 1136 (Ind. 2003).  Our supreme court explained in *State v. Spillers* that:

> In deciding whether to issue a search warrant, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The duty of the reviewing court is to determine whether the magistrate had a "substantial basis" for concluding that probable cause existed. *Id*. at 238-39.  A substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination of probable cause.  A reviewing court for these purposes includes both the trial court ruling on a motion to suppress and an appellate court reviewing that decision. Although we review de novo the trial court's substantial basis determination, we nonetheless afford significant deference to the magistrate's determination as we focus on whether reasonable

inferences drawn from the totality of the evidence support that determination.

847 N.E.2d 949, 953 (Ind. 2006) (some citations and quotations omitted).

# II. Search Warrant

On appeal, Bell argues that the trial court erroneously admitted evidence obtained from the execution of a search warrant lacking probable cause.[1]

The Fourth Amendment to the United States Constitution provides, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." Article 1, Section 11 of the Indiana Constitution contains nearly identical language as the Fourth Amendment but "interpretations and applications vary between them." *Holder v. State*, 847 N.E.2d 930, 935 (Ind. 2006).

Trash searches are one of the ways that Article 1, Section 11 has been interpreted to provide broader protections than the Fourth Amendment. In the

---

[1] By pleading guilty, Bell has waived any challenge to his conviction of possession of methamphetamine, a Level 3 felony. It is well-established that a defendant who pleads guilty forfeits a "plethora of substantive claims and procedural rights," and a defendant cannot go on to challenge pre-trial orders on appeal. *Alvey v. State*, 911 N.E.2d 1248, 1250-51 (Ind. 2009) (holding a defendant cannot plead guilty and later challenge the trial court's denial of a pre-trial motion to suppress).

oft-cited case of *Litchfield v. State*, 824 N.E.2d 356, 363 (Ind. 2005), our supreme court held that for a search of a suspect's trash to be reasonable under Article 1, Section 11, the search must be based on reasonable suspicion, despite no such Fourth Amendment prohibition. Herein lies the basis of Bell's appeal: Bell alleges that the search warrant affidavit "contained a two tiered basis for attempting to establish probable cause," in which the first portion of the affidavit contained "multiple statements of hearsay" used to demonstrate reasonable suspicion to "justify two trash pulls from Bell's residence." Brief of Defendant-Appellant at 8-9. Because police failed to corroborate the hearsay information, Bell argues, police lacked the requisite reasonable suspicion to conduct the trash searches at his residence, and therefore the "trash pull evidence" should not have been considered by the trial court in its determination of probable cause. *Id.* at 9.

[10] While much of our jurisprudence regarding hearsay information in search warrant affidavits considers whether the information constituted probable cause, *see, e.g.*, *Scott v. State*, 883 N.E.2d 147, 154 (Ind. Ct. App. 2008), here, Bell alleges that the hearsay information was insufficient to constitute reasonable suspicion—a lower standard. *See Clark v. State*, 994 N.E.2d 252, 261 (Ind. 2013). In turn, the State admits the hearsay information was derived from "anonymous hearsay sources," but argues that the reliability of the information was established through independent police investigation. Br. of Appellee at 18. We agree with the State.

[11] Probable cause to search a premises "is established when a sufficient basis of fact exists to permit a reasonably prudent person to believe that a search of those premises will uncover evidence of a crime." *Helsley v. State*, 809 N.E.2d 292, 295 (Ind. 2004). In *Alabama v. White,* the United States Supreme Court explained:

> Reasonable suspicion is a less demanding standard than probable cause not only in the sense that reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause, but also in the sense that reasonable suspicion can arise from information that is less reliable than that required to show probable cause. *Adams v. Williams*, [407 U.S. 143 (1972),] demonstrates as much. We there assumed that the unverified tip from the known informant might not have been reliable enough to establish probable cause, but nevertheless found it sufficiently reliable to justify a *Terry* stop. [*Id*. at 147]. Reasonable suspicion, like probable cause, is dependent upon both the content of information possessed by police and its degree of reliability. Both factors—quantity and quality—are considered in the "totality of the circumstances—the whole picture," that must be taken into account when evaluating whether there is reasonable suspicion. Thus, if a tip has a relatively low degree of reliability, more information will be required to establish the requisite quantum of suspicion than would be required if the tip were more reliable.

496 U.S. 325, 330 (1990) (some citations omitted).

[12] Here, the search warrant affidavit stated that police had "received information from two different sources since September 2015 that [Bell] and Natasha Bell have been selling illegal drugs out of the residence . . ." Appellant's App., Vol.

II at 30. The "sources" explained that Bell would frequent South Bend in order to retrieve heroin, traffic in and out of the residence would increase upon his return, the residence "smells like they are cooking methamphetamine," and that on one occasion, Bell and Natasha were heard outside fighting when one yelled "I gave you $500 to buy drugs, where are my drugs[?]" *Id.*

[13] As the supreme court explained in *Alabama v. White*, the "totality of the circumstances—the whole picture," must be taken into account when evaluating reasonable suspicion. 496 U.S. at 330. Although the sources may have been known to Detective Olejniczak, he makes no such allegation in the search warrant affidavit. Therefore, we find it appropriate, as the State admits on appeal, State's Br. of Appellee at 18, to view the hearsay information as originating from anonymous sources and, as is well-known in criminal law, "an anonymous tip alone is not likely to constitute" reasonable suspicion. *Lampkins v. State*, 682 N.E.2d 1268, 1271 (Ind. 1997) (citing *Alabama*, 496 U.S. at 329-30). However, we note that because there was more than one source and both sources reported having observed the criminal activity firsthand, the tips are entitled to "greater weight than might otherwise be the case." *McGrath v. State*, 95 N.E.3d 522, 528 (Ind. 2018).

[14] Nevertheless, in *Sellmer v. State*, our supreme court explained that in order for an anonymous tip to constitute reasonable suspicion, at least two conditions must be met:

> First, significant aspects of the tip must be corroborated by the police. Such corroboration requires that an anonymous tip give

the police something more than details regarding facts easily obtainable by the general public to verify its credibility. Second, an anonymous tip, if it is to be considered reliable enough to constitute reasonable suspicion to conduct an investigatory stop, must also demonstrate an intimate familiarity with the suspect's affairs and be able to predict future behavior.

842 N.E.2d 358, 361 (Ind. 2006) (citation and quotations omitted).

[15] Here, the anonymous sources displayed familiarity with Bell, explained that his residence "smell[ed] like they [were] cooking methamphetamine," and described his behavior—specifying that Bell retrieved heroin from South Bend and that traffic in and out of his residence increased upon his return. Appellant's App., Vol. II at 30. Thereafter, Detective Olejniczak undertook investigative steps to corroborate the information, first contacting Natasha's probation officer, learning that Natasha had tested positive for methamphetamine, and then conducting surveillance and observing "subjects frequenting the residence." *Id.*

[16] In turn, Bell alleges that the "facts provided by [Detective Olejniczak] in an attempt to corroborate the anonymous tips suffered from a lack of timeliness." Br. of Defendant-Appellant at 11. Although "[i]t is a fundamental principle of search and seizure law that the information given to the magistrate or judge in the application for a search warrant must be timely," *Breitweiser v. State*, 704 N.E.2d 496, 499 (Ind. Ct. App. 1999), Bell's argument misunderstands the relevant standard. Br. of Defendant-Appellant at 10. Bell cites only one case, *Ashley v. State*, 241 N.E.2d. 264, 368 (Ind. 1968), which involved probable

cause, and alleges that stale information, such as Natasha's two-month old positive methamphetamine test, was insufficient to constitute probable cause. However, as is the premise of Bell's appeal, the hearsay information and its corroboration need only show reasonable suspicion for the subsequent trash searches, not probable cause for the issuance of the search warrant. Accordingly, we view the evidence under this lesser standard, and "staleness of the information must be judged by the facts and circumstances of each case." *Breitweiser*, 704 N.E.2d at 499. On the facts presented here, we do not believe the information obtained by Detective Olejniczak was too "stale" to provide corroboration of the underlying hearsay information. *See Scott v. State,* 883 N.E.2d 147, 155 (Ind. Ct. App. 2008) (noting that a detective smelling ether at a residence within the proceeding two-month period corroborated details of hearsay information).

[17] Therefore, mindful that we are to view the facts under the totality of the circumstances, we conclude that Detective Olejniczak possessed reasonable suspicion to conduct searches of Bell's trash. *See Love v. State,* 842 N.E.2d 420, 425 (Ind. Ct. App. 2006) (concluding anonymous tip with independent indicia of reliability and corroboration constituted reasonable suspicion for the purpose of a trash search). As such, and in the absence of argument that the probable cause affidavit lacked probable cause when including the fruits thereof, Bell has failed to overcome the presumption the search warrant is valid.

# Conclusion

[18] Concluding the trial court did not abuse its discretion in admitting evidence obtained as the result of the search warrant, we affirm.

[19] Affirmed.

Najam, J., and Altice, J., concur.