## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Feb 20 2019, 9:11 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ellen M. O'Connor
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Ellen H. Meilaender
Supervising Deputy
Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Deion Orr, *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, *Appellee-Plaintiff.* | February 20, 2019 <br><br> Court of Appeals Case No. 18A-CR-1141 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Alicia Gooden, Judge <br><br> Trial Court Cause No. 49G21-1603-F4-9303 |

**Robb, Judge.**

# Case Summary and Issues

[1] Deion Orr was charged with three counts of unlawful possession of a firearm by a serious violent felon, all Level 4 felonies, and dealing in marijuana, a Level 6 felony. A jury found Orr guilty of dealing in marijuana, not guilty of the second and third count of unlawful possession of a firearm, and was hung on the first count of unlawful possession of a firearm. The State then obtained a search warrant for Orr's cellphone, which had been in evidence since his initial arrest, and Orr filed a motion to suppress the evidence recovered from the phone. The trial court denied Orr's motion and, following a second jury trial, Orr was found guilty of unlawful possession of a firearm by a serious violent felon, a Level 4 felony. Orr now appeals his latter conviction presenting two issues for our review of which we find the first dispositive: whether the trial court erred in admitting evidence obtained from Orr's cellphone. Concluding the trial court did not err in admitting the evidence, we affirm.

# Facts and Procedural History

[2] Following a several month investigation and surveillance of Orr's residence, officers of the Indianapolis Metropolitan Police Department served a no-knock search warrant on March 7, 2016. Orr was found in the northeast bedroom of the residence ("Bedroom #1"), seated on the floor next to the bed, along with

his friend, David Gibbs, who was standing at the foot of the bed.[1] Police located Orr's mother, Natalie Orr, and her friend Phillip Powell in the north bedroom ("Bedroom #3"). All four subjects were detained, informed of the search warrant, and advised of their *Miranda* rights.

[3] During a search of Bedroom #1, police found a cellphone lying on the bed. Orr provided his cellphone number to police and the cellphone rang when police called Orr's phone number. Police located a loaded .40 caliber Glock handgun in a holster under the sheet of the bed near the cellphone. A debit card, a hospital bill, and another piece of mail addressed to Orr were found on top of a dresser next to a digital scale. Inside one of the dresser drawers, police found a gun cleaning kit, Orr's high school ID card from 2011, and four glass mason jars containing marijuana.[2] A bulletproof vest was leaning against the side of the dresser. A floor safe contained Orr's current Indiana driver's license and $3,976 in cash. Two glass mason jars containing marijuana were found in a backpack by the bed and a second digital scale was found near the backpack. A box of empty mason jars was on the floor. Police found an inoperable cellphone on a chair in the bedroom and a single .40 caliber round of ammunition. Police also found a casino card with the name Ronnie Orr, Orr's brother, who was not present in the house but occasionally stayed there.

---

[1] A second bedroom ("Bedroom #2") was empty but later searched for evidence.

[2] Orr's fingerprint was found on one of the jars.

In their search of Bedroom #2, police found an ammunition magazine underneath a foam mattress that was compatible with the .40 caliber Glock handgun found in Bedroom #1. Ronnie's expired Indiana handgun permit was located near the magazine and a letter from the Indiana State Police rejecting the renewal of Ronnie's Indiana handgun permit. Police found an additional mason jar containing marijuana, another digital scale, a second .40 caliber Glock handgun, and a Ruger rifle.

In total, police recovered 915 grams of marijuana and all three digital scales tested positive for marijuana residue. The State charged Orr with three counts of unlawful possession of a firearm by a serious violent felon, all Level 4 felonies, and dealing in marijuana, a Level 6 felony. The three firearm possession charges pertained to the .40 caliber Glock handgun found in Bedroom #1, the .40 caliber Glock handgun found in Bedroom #2, and the Ruger rifle found in Bedroom #2, respectively. Following a trial on December 5-6, 2017, the jury found Orr guilty of dealing in marijuana, not guilty of the second and third count of unlawful possession of a firearm, and was unable to reach a verdict on the first count of unlawful possession of a firearm.

A week after the trial, on December 14, 2017, Detective Ryan VanOeveren filed an affidavit for a search warrant which stated, in relevant part:

> Based upon the investigation further described below, this Affiant believes and has probable cause to believe that certain evidence of the crime of Dealing in Marijuana and Possession of a Firearm by a Serious Violent Felon will be found within the following described property:

LG cell phone, Phone# 317-871-xxxx, serial number 510CYLH0291792 belonging to Deion Orr. (Bedroom #1)

Kyocera cell phone, serial number V65C5170 (Bedroom #1)

LG cellphone. serial number 501CYDG0663338 (Bedroom #2)

In support of your affiant's assertion of probable cause, the following facts are within this Affiant's personal knowledge or have been learned through the investigation:

On March 7, 2016 at approximately 11:00pm, I, Ryan VanOeveren, a police officer with the Indianapolis Metropolitan Police Department and assisting IMPD officers served a signed and valid no knock search warrant at [Orr's residence]. The IMPD SWAT team made forced entry into the residence and located black male [Orr] and black male [Gibbs] in the northeast bedroom (Bedroom #1). SWAT members also located Natalie Orr and Phil Powell in the north bedroom (Bedroom #3). All four subjects were detained and brought to the living room where I read them the contents of the search warrant. All four subjects stated they understood the contents of the search warrant. I read all four subjects their Miranda warnings and all four subjects stated they understood their rights. A detailed search of the residence was conducted.

* * *

This affiant knows that individuals will likely have digital photographs and/or videos of themselves and/or unknown/known associates on their cell phone devices and viewing the digital data will aid law enforcement in the

> prosecution of Deion Orr. Furthermore, accessing incoming and
> outgoing phone call logs, incoming and outgoing text messages,
> and social media data from Deion Orr's cellphone will provide
> further evidence of the crime of dealing in narcotics, firearms
> violations, and other criminal activity.

Appellant's Appendix, Volume III at 19-21. The cellphones had been in police custody since Orr's initial arrest on March 7, 2016. The trial court issued a search warrant for the cellphones on December 14, 2017. *See id*. at 32.

[7] During the search of the cellphone found on the bed in Bedroom #1, the user account information indicated that the cellphone was connected to the email address "deionorr3@xxxxx.com." Transcript, Volume IV at 118. Police found two pictures of a handgun: one from 9:45 p.m. on December 8, 2015, and a second from 7:35 p.m. on December 9, 2015. Detective VanOeveren later testified that the handgun in the photographs looked very similar to the handgun found in Bedroom #1 and that the two shared specific characteristics not found in other generations of the Glock handgun. *See id.* at 149-51. Police also found several "selfies" of Orr on the cellphone and a photograph of Orr dated January 1, 2016.

[8] On March 2, 2018, Orr moved to suppress the evidence found on the cellphone alleging that the information in the probable cause affidavit was stale, that the State had "forum shopped" by not submitting the search warrant request to the judge presiding over Orr's prosecution, and that Detective VanOeveren had misled the issuing judge by omitting information that the case had already gone

to trial and the resulting verdicts from the trial. *See* Appellant's App., Vol. II at 237.

[9] A second jury trial was conducted on the first count of unlawful possession of a firearm on March 6, 2018. The trial court orally denied Orr's motion to suppress and the evidence obtained from the cellphone was admitted over Orr's objection. The jury found Orr guilty of unlawful possession of a firearm. Orr waived a jury for the second phase of the trial and stipulated that he was a serious violent felon due to his prior conviction for Class B felony robbery. The trial court imposed a ten-year sentence on the firearm possession conviction and a two-year sentence on the dealing in marijuana conviction to be served concurrently. Orr now appeals.

# Discussion and Decision

## I. Standard of Review

[10] Although Orr presented a pretrial motion to suppress, he did not seek interlocutory review of that decision when it was denied. Thus, we consider his issue on appeal as a review of the trial court's decision to admit evidence at trial. *Clark v. State*, 994 N.E.2d 252, 259 (Ind. 2013) ("Direct review of the denial of a motion to suppress is only proper when the defendant files an interlocutory appeal.").

[11] > In ruling on admissibility following the denial of a motion to suppress, the trial court considers the foundational evidence presented at trial. It also considers the evidence from the

suppression hearing that is favorable to the defendant only to the extent it is uncontradicted at trial. Because the trial court is best able to weigh the evidence and assess witness credibility, we review its rulings on admissibility for abuse of discretion and reverse only if a ruling is clearly against the logic and effect of the facts and circumstances and the error affects a party's substantial rights. But the ultimate determination of the constitutionality of a search or seizure is a question of law that we consider de novo.

*Carpenter v. State*, 18 N.E.3d 998, 1001 (Ind. 2014) (citations and quotations omitted). Furthermore, we "may affirm the trial court's ruling if it is sustainable on any legal basis in the record, even though it was not the reason enunciated by the trial court." *Harris v. State,* 19 N.E.3d 298, 301 (Ind. Ct. App. 2014), *trans. denied.*

## II. Search and Seizure

Orr argues that the trial court erred in admitting the evidence collected from his cellphone pursuant to a search warrant because the search was unreasonable and thus unconstitutional under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution. Specifically, Orr claims that the information contained in the search warrant was stale because it simply recycled the probable cause affidavit submitted with Orr's original charges over a year and half earlier and omitted information from the intervening period, such as the fact that Orr was already convicted of dealing in marijuana.

[13]     It is well-settled that the extraction of data from a cellphone constitutes a search that requires police to obtain a search warrant prior to extraction. *Riley v. California*, 134 S.Ct. 2473, 2493 (2014). Both the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution require probable cause for the issuance of a search warrant. *Breitweiser v. State*, 704 N.E.2d 496, 499 (Ind. Ct. App. 1999). Probable cause is "a fluid concept incapable of precise definition . . . [and] is to be decided based on the facts of each case." *Figert v. State*, 686 N.E.2d 827, 830 (Ind. 1997). "The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The reviewing court's duty is to determine whether the issuing magistrate had a "substantial basis" for concluding that probable cause existed. *Id*. at 238-39. "[A] substantial basis requires the reviewing court, with significant deference to the magistrate's determination, to focus on whether reasonable inferences drawn from the totality of the evidence support the determination" of probable cause. *Houser v. State*, 678 N.E.2d 95, 99 (Ind. 1997). A "reviewing court" for this purpose includes both the trial court ruling on a suppression motion and an appellate court reviewing that decision. *Id*. at 98. Furthermore, we resolve any doubt in favor of upholding the warrant, and we will not invalidate a warrant by interpreting probable cause affidavits in a hypertechnical, rather than a commonsense, manner. *Rios v. State*, 762 N.E.2d 153, 161 (Ind. Ct. App. 2002).

# A. Omission of Material Facts

First, Orr argues the trial court erred in admitting the evidence from his cellphone because the police were required to disclose in the probable cause affidavit that Orr had already been tried in this case and had been found guilty of dealing in marijuana and not guilty of two of the three firearm charges.

In *Ware v. State*, a panel of this court explained that "a probable cause affidavit must include all material facts, which are those facts that 'cast doubt on the existence of probable cause.'" 859 N.E.2d 708, 718 (Ind. Ct. App. 2007) (quoting *Query v. State*, 745 N.E.2d 769, 772 (Ind. 2001)), *trans. denied*. When the State has failed to include one or more material facts in its application, we determine the validity of the warrant by considering the omitted information and the information contained in the affidavit together. *Id.* In order for the warrant to be invalid, the defendant must show:

> (1) that the police omitted facts with the intent to make, or in reckless disregard of whether they thereby made, the affidavit misleading, . . . and (2) that the affidavit if supplemented by the omitted information would not have been sufficient to support a finding of probable cause.

*Id.*

Applied here, Orr must show: (1) the police failed to include the information from Orr's first trial with the intent to make, or in reckless disregard of whether they would thereby make the affidavit misleading; and (2) if the affidavit had

disclosed the information from Orr's first trial, the affidavit would not have been sufficient to support a finding of probable cause.

[17] Omissions from a probable cause affidavit are made with reckless disregard "if an officer withholds a fact in his ken that '[a]ny reasonable person would have known that this was the kind of thing the judge would wish to know.'" *Gerth v. State*, 51 N.E.3d 368, 374-75 (Ind. Ct. App. 2016) (quoting *Wilson v. Russo*, 212 F.3d 781, 788 (3rd Cir. 2000)). Here, the affidavit purported "that certain evidence of the crime of Dealing in Marijuana and Possession of a Firearm by a Serious Violent Felon will be found" and that the information "will provide further evidence of the crime of dealing in narcotics, firearms violations, and other criminal activity." Appellant's App., Vol. III at 19, 21. Thus, the affidavit implied Orr was involved in ongoing narcotic and firearm crimes and the need to obtain evidence from the phone was critical to his prosecution. The officer made this representation despite the facts that Orr had already been convicted of dealing in marijuana, remained in police custody, and was found not guilty of two of the three firearms charges. *See, e.g., Thompson v. State*, 259 Ind. 587, 290 N.E.2d 724, 726 (1972) (noting "[t]he Double Jeopardy clause is assurance that the State will not be allowed to make repeated attempts to convict an accused for the same offense") (citing U.S. Const. amend. V and XIV; Ind. Const. art. 1, § 14). We therefore agree that the omitted information regarding Orr's first trial was the kind of thing that any reasonable person would have known the judge would wish to know, *see Gerth,* 51 N.E.3d at 375,

and Orr has made a showing that the information was omitted with reckless disregard of whether the affidavit would be misleading.

[18] Proceeding to the second prong of the inquiry, however, we conclude Orr has failed to demonstrate that had the affidavit disclosed the omitted information, the affidavit would have been insufficient to support a finding of probable cause. To the contrary, portions of the affidavit pertaining to the remaining firearm charge still provided the issuing judge with a "substantial basis" for concluding that probable cause existed. *See Gates*, 462 U.S. at 238-39. Therefore, while we take this opportunity to remind police that "the best course . . . to follow is to include any information that could conceivably affect a probable cause determination[,]" *Ware*, 859 N.E.2d at 720, we conclude the omission at issue here was not fatal.

## B. Staleness

[19] Next, Orr argues the trial court erred in admitting the evidence from his cellphone seized on March 7, 2016, because much of the information in the probable cause affidavit was stale by the time of the issuance of the search warrant on December 14, 2017.

[20] "It is a fundamental principle of search and seizure law that the information given to the magistrate or judge in the application for a search warrant must be timely." *Breitweiser v. State*, 704 N.E.2d 496, 499 (Ind. Ct. App. 1999) (citing *Sgro v. United States*, 287 U.S. 206 (1932)). Stale information gives rise to a mere suspicion and not a reasonable belief, especially when the items to be obtained in a search are easily concealed and moved. *Raymer v. State*, 482 N.E.2d 253, 255 (Ind. 1985). Although the age of the

information supporting an application for a warrant can be a critical factor when determining the existence of probable cause, our courts have not established a bright-line rule regarding the amount of time which may elapse between obtaining the facts upon which the search warrant is based and the issuance of the warrant. *Breitweiser*, 704 N.E.2d at 499.

*Frasier v. State,* 794 N.E.2d 449, 457 (Ind. Ct. App. 2003) (citation omitted), *trans. denied.* Probable cause is not determined by merely counting the number of days between the occurrence of the facts relied upon and the issuance of the search warrant. *Mehring v. State*, 884 N.E.2d 371, 377 (Ind. Ct. App. 2008), *trans. denied.* Rather, whether the information is tainted by staleness must be determined by the facts and circumstances of each particular case, which includes the nature of the crime and the nature of the evidence seized or sought. *Id.* at 378.

[21] Here, the State sought evidence in connection to a charge of unlawful possession of a firearm by a serious violent felon. The State first alleged direct evidence of Orr's possession of the firearm may be found in photographs, videos, emails, or text messages. And second, due to cellphone's proximity to the .40 caliber Glock handgun in Bedroom #1, the State sought evidence connecting Orr to the phone and identifying him as the owner of the phone in order to prove his constructive possession of the handgun. *See Gee v. State,* 810 N.E.2d 338, 340-41 (Ind. 2004) (noting the mingling of the contraband with other items owned by the defendant is an additional circumstance establishing the defendant's constructive possession of the contraband).

Applying the staleness doctrine to the facts presented here, we conclude the information in the probable cause affidavit remained largely unaffected by the passage of time. As the Seventh Circuit has explained,

> "Staleness" is highly relevant to the legality of a search for a perishable or consumable object, like cocaine, but rarely relevant when it is a computer file. Computers and computer equipment are not the type of evidence that rapidly dissipates or degrades.

*U.S. v. Seiver*, 692 F.3d 774, 777 (7th Cir. 2012), *cert. denied*, 568 U.S. 1113 (2013).[3] Indeed, where, as here, a cellphone has remained in police custody, staleness is even less relevant to the legality of the search because any evidence will almost certainly remain. *See, e.g., U.S. v. Flores-Lopez*, 670 F.3d 803, 809 (7th Cir. 2012) (noting it is "conceivable, [but] not probable," that a confederate of a defendant could have wiped data from a defendant's cellphone before the government could obtain a search warrant); *Commonwealth v. Knoble*, 188 A.3d 1199, 1207 (Pa. Super. Ct. 2018) (concluding that where a cellphone was in police custody during a nine-month period between the first and second search, it was "evident that the facts and circumstances presented to the magistrate who issued the initial search warrant did not change"), *appeal denied*; *Commonwealth v. Ericson*, 10 N.E.3d 127, 133 (Mass. App. Ct. 2014) (concluding that where a cellphone has remained in police custody "the information (content of the cell

---

[3] For the purposes of the staleness doctrine, we view the Seventh Circuit's discussion of computers and computer equipment as sufficiently akin to modern cellphone technology.

phone) supporting the probable cause determination is less likely to change"), *review denied*.

[23] Orr was a serious violent felon due to his robbery convictions in 2012, *see* Appellant's App., Vol. III at 106, and he was prohibited from "knowingly or intentionally possess[ing] a firearm" from that point on. Ind. Code §§ 35-47-4-5(b)(13); 35-47-4-5(c). As the photographs obtained by the State were here, evidence obtained from the cellphone could be electronically dated. This evidence tended to show Orr knowingly or intentionally possessed a firearm *after* his previous convictions but *before* his cellphone was seized. And, because the cellphone remained in police custody since the date of its seizure, any evidence that was contained in the cellphone was all but certain to still be there on the date of the search warrant—regardless of how much time had passed.

[24] Therefore, given the nature of Orr's alleged crime, the evidence sought by the State, and the fact that the cellphone had remained in police custody since its initial seizure, we conclude the information presented in the probable cause affidavit was not rendered unconstitutionally stale by the mere passage of time. As such, Orr has failed to demonstrate the trial court erred in admitting the fruits thereof.

# Conclusion[4]

For the reasons set forth above, we hold the trial court did not err in admitting the evidence obtained from Orr's cellphone. Accordingly, we affirm Orr's conviction.

Affirmed.

Riley, J., and Kirsch, J., concur.

---

[4] Orr also argues that there was insufficient evidence to sustain his conviction of unlawful possession of a firearm by a serious violent felon. However, Orr's argument on this issue is premised on his argument that the trial court erred in admitting evidence obtained from his cellphone. Because we hold the trial court did not err in admitting the evidence, we need not consider this argument.