

FILED

Oct 24 2019, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

| ATTORNEY FOR APPELLANT | ATTORNEYS FOR APPELLEE |
|---|---|
| Brandon E. Murphy<br>Muncie, Indiana | Curtis T. Hill, Jr.<br>Attorney General of Indiana |
| | Samuel J. Dayton<br>Deputy Attorney General<br>Indianapolis, Indiana |

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Galen Byers,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | October 24, 2019<br><br>Court of Appeals Case No.<br>19A-CR-246<br><br>Appeal from the Jay Circuit Court<br><br>The Honorable Brian D.<br>Hutchison<br><br>Trial Court Cause No.<br>38C01-1806-F2-13 |

**Tavitas, Judge.**

## Case Summary

[1] Galen Byers, on interlocutory appeal, appeals the trial court's denial of his motion to suppress. We affirm.

## Issue

Byers raises one issue for our review, which we restate as whether the trial court erred in denying Byers' motion to suppress because the warrant to search his home was allegedly constitutionally stale.

## Facts

Marcie Vormohr was Byers' neighbor in Portland, Indiana. In May 2018, Vormohr was mowing her yard when she noticed something in her yard; after an inspection, Vormohr realized it was a drone.[1] Vormohr noticed that the drone also had a computer drive attached. Vormohr purchased a reader for the device and plugged the device into her home computer to determine the owner of the drone.

Vormohr found video footage on the drive, that depicted a woman "tak[ing] out a white [ ] baggie, a small baggie with white powder substance in it, [and a] cut off straw, and [Vormohr] found that to probably be drugs." Tr. Vol. II p. 8. Vormohr also identified Byers on the video, whom she recognized as her neighbor. After observing the video footage, Vormohr turned the device and the drone over to law enforcement due to the video's contents and because she

---

[1] Vormohr testified that she does not recall exactly when she found the drone; however, it would appear to have been some time between May 10, 2018, when the last of the video footage was filmed on the drone, and May 14, 2018, when police obtained the search warrant after reviewing the drone's video footage.

previously had an issue with drones being flown over her property.[2] Vormohr testified that she could not remember the exact date she turned the materials over to law enforcement; however, she believed that it "may have been one or two days" after she discovered the drone. *Id.* at 7.

[5] Officer Cody Jessee with the Jay County Sheriff's Department testified that he received the drone and, on May 14, 2018, reviewed the video footage. Officer Jessee observed that the video's last modified date was May 10, 2018, at 9:32 a.m. Based on Officer Jessee's review of the video footage, Officer Jessee believed the woman on the video was in possession of illegal substances. Officer Jessee also observed Byers flying the drone on the video. After reviewing the video footage, Officer Jessee obtained a search warrant for Byers' home.

[6] A search of Byers' home on May 14, 2018, revealed several drug paraphernalia items, including "snorting devices containing a powder like substance in them"; "several empty baggies containing a paw print sticker";[3] an unlocked safe with "a scattered crystal like substance as well as a cut straw containing a crystal like substance." Appellant's App. Vol. II p. 13. In a locked safe, which officers opened, they discovered "a Glock 30 gen 4, .45 Cal[iber handgun]. . . . [and]

---

[2] Vormohr was uncertain if it was Byers' drone or another drone she had issues with previously. Vormohr and Byers previously had a discussion about Vormohr's issues with drones being flown over her property; however, Byers indicated it was not his drone flying over Vormohr's property.

[3] Officers believed the paw print stickers were being placed on the baggies "as a possible brand name." Appellant's App. Vol. II p. 13.

four empty plastic baggies baring [sic] the paw print sticker;" "green plastic baggie with a crystal like substance," which weighed .8 grams in its packaging and tested positive for methamphetamine when field tested. *Id.* at 13-14. Officers also found $160.00 in twenty-dollar bills in the safe and an "ink stamp and pad and stamp of a paw print" in Byers' bedroom. *Id.* at 14.

[7] In the living room, officers uncovered "several burnt foils which are used in the consumption of methamphetamine"; a "digital scale under the couch and a glass bowl," which contained a "crushed crystal like substance and a cut red straw" that tested positive for methamphetamine when field tested. *Id.* Officers also found with "several feminine items," three cut straws, and three plastic baggies "containing a residue." *Id.* A search of the bathroom yielded $3,684.00 of cash inside a makeup bag; a box containing baggies with a crystal like substance; and more cut straws. The three baggies weighed approximately 2.4 grams in their packaging and tested positive for methamphetamine when field tested. Officers believed these items to belong to Jennifer Cook—a woman who was at Byers' home when officers arrived.

[8] Finally, officers found more burnt foils, burnt marijuana "roaches," snorting devices, another digital scale;[4] and another 2.4 grams of methamphetamine "in its original packaging"; and another weapon loaded with a magazine and additional magazines upstairs. *Id.* Finally, Byers had $2,003.00 on his person.

---

[4] These items are also believed to belong to Cook.

[9] On June 13, 2018, the State charged Byers with Count I, dealing in methamphetamine, a Level 2 felony; Count II, possession of methamphetamine, a Level 4 felony; Count III, maintaining a common nuisance, a Level 6 felony; and Count IV, possession of marijuana, a Class B misdemeanor.

[10] On October 18, 2018, Byers filed his first motion to suppress. On November 5, 2018, Byers filed a motion to amend the motion to suppress, and the trial court granted the motion to amend on November 7, 2018. The amended motion to suppress sought to suppress "any evidence found as a result of law enforcement activity leading to and including a search of a drone" under the Fourth Amendment to the United States Constitution and Article 1, Section 11 of the Indiana Constitution.[5] *Id.* at 66. Byers argued that the search was improper under both constitutions because of the manner in which the drone came into possession of law enforcement and because the probable cause was stale.

[11] The trial court held a hearing on Byers' motion to suppress on November 29, 2018. The trial court entered an order on December 18, 2018, and denied Byers' amended motion to suppress, "declin[ing] to find that the four[ ]intervening days necessarily make[] the evidence stale or that the search was unreasonable under these circumstances." Appellant's App. Vol. II p. 87. On January 4, 2019, Byers filed a motion to certify the trial court's order for

---

[5] On appeal, Byers does not assert an argument under the Indiana Constitution.

interlocutory appeal, which the trial court granted on January 7, 2019. The trial court also vacated the pending hearing dates and jury trial date pending the outcome of this interlocutory appeal. Our Court accepted jurisdiction over the interlocutory appeal on March 5, 2019.

## Analysis

Byers argues that the trial court erred in denying his motion to suppress. Byers focuses his arguments on the officers' use of the video drone footage to obtain a search warrant of Byers' home. Byers specifically contends that the search warrant was constitutionally stale based on three specific facts of this case: (1) there was no evidence on the video that Byers himself used the alleged illegal substances; (2) there was only evidence of one-time possession and consumption of the alleged illegal substances; and (3) the search warrant was executed four days after the video depicting the use of the alleged illegal substances was filmed.

Our justice system entrusts the admission of evidence to the trial court's sound discretion. We review a trial court's denial of a defendant's motion to suppress deferentially, construing conflicting evidence in the light most favorable to the ruling, but we will also consider any substantial and uncontested evidence favorable to the defendant. We defer to the trial court's findings of fact unless they are clearly erroneous, and we will not reweigh the evidence. When the trial court's denial of a defendant's motion to suppress concerns the constitutionality of a search or seizure, however, it presents a question of law, and we address that question de novo.

*Robinson v. State*, 5 N.E.3d 362, 365 (Ind. 2014) (citations omitted).  Here, Byers' arguments focus on the Fourth Amendment issue of staleness.

[14]   "The Fourth Amendment to the United States Constitution and article 1, section 11 of the Indiana Constitution both require probable cause for the issuance of a search warrant.[6] *Mehring v. State,* 884 N.E.2d 371, 376 (Ind. Ct. App. 2008) (citations omitted).  "Probable cause is 'a fluid concept incapable of precise definition and is to be decided based on the facts of each case.'" *Mehring,* 884 N.E.2d at 376 (quoting *Figert v. State,* 686 N.E.2d 827, 830 (Ind. 1997)).  "In deciding whether to issue a search warrant, the issuing magistrate's task is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, there is a fair probability that evidence of a crime will be found in a particular place." *Id.*  "The general rule is that stale information cannot support a finding of probable cause. . . .  Stale information only gives rise to a mere suspicion and not a reasonable belief, especially when the items to be obtained in a search are easily concealed and moved." *Raymer v. State,* 482 N.E.2d 253, 255 (Ind. 1985).  Because the issue of staleness is fact-specific, we compare Byers' case to other Indiana cases.

[15]   In *Breitweiser v. State,* 704 N.E.2d 496 (Ind. Ct. App. 1999), officers requested a search warrant of the defendant's home on February 25, 1997, based on

---

[6] Byers does not assert an argument under the Indiana Constitution in his brief on appeal; however, for completeness, we note that probable cause is required under both the United States Constitution and the Indiana Constitution.

marijuana found in the defendant's trash can on February 10 and 17, 1997. *Breitweiser,* 704 N.E.2d at 498. The defendant argued that, "because there was an eight-day period between when the police last recovered marijuana plant fragments from his trash and the issuance of the warrant, the information obtained by the officers was stale and did not constitute probable cause." *Id.* at 498. Our Court ultimately concluded that, under the circumstances, there was probable cause for the issuance of a warrant.

[16] In reaching the decision, our Court stated, based on the fundamental principles of search and seizure law requiring that search warrant applications must be timely, "the facts in support of the warrant must be so close to the time of the issue of the warrant as to justify a finding of probable cause at the time." *Id.* at 499. Our Court went on to note that, while the age of the information is a "critical factor" in determining probable cause, there is no "precise rule as to how much time may elapse between the obtaining of the facts upon which the search warrant is based and the issuance of the warrant." *Id.* Therefore, "probable cause is not determined by merely counting the number of days between the occurrence of the facts relied upon and the warrant's issuance," but instead, the staleness is judged by "the facts and circumstances of each case." *Id.*

[17] Our Court distinguished the situation in *Breitweiser*—in which officers continually investigated the drug activity at the defendant's residence and found evidence of drug activity on two separate occasions—from situations in which there is an isolated occurrence. Our Court stated that "the character of the

criminal activity under investigation is an important factor to consider. . . ." *Id.*
at 500. Specifically, "[w]here an affidavit merely recites an isolated crime, as in
*Ashley*[*v. State,* 241 N.E.2d 264 (Ind. 1968)], time between the occurrence and
the issuance of the warrant will likely be crucial to a determination of probable
cause." *Id.*

[18] In *Ashley,* our Supreme Court held:

> Although there can be no precise rule as to how much time may
> intervene between the obtaining of the facts and the issuance of
> the search warrant, in dealing with a substance like [marijuana],
> which can be easily concealed and moved about, probable cause
> to believe that it was in a certain building on the third of the
> month is not probable cause to believe that it will be in the same
> building eight days later. Therefore, since the affidavit only
> made a showing of probable cause existing on October 3, 1964,
> and not on October 11, 1964, when the search warrant was
> issued the search warrant was defective and it was error to deny
> appellant's motions to quash the affidavit for the search warrant
> and to suppress the evidence thereunder seized.

*Ashley,* 241 N.E.2d at 269.

[19] Finally, in *Huffines v. State,* 739 N.E.2d 1093 (Ind. Ct. App. 2000), *trans. denied,*
a panel of our Court reversed the trial court's denial of the motion to suppress,
holding:

> To reiterate, the police waited eight days to execute the search of
> Huffines' home, the same number of days that elapsed in *Ashley*
> between the showing of probable cause and issuance of the
> search warrant. And here, as in *Ashley,* the warrant was based on
> a single, isolated drug transaction. There is no evidence of

repeated or ongoing criminal activity. The affidavit did not detail the amount of drugs that C.I. saw in Huffines' home. Thus, we cannot know whether it was a large amount or only the amount that C.I. purchased.

*Id.* at 1099; *see also Tinnin v. State,* 416 N.E.2d 116, 208-09 (Ind. 1981) (finding that the evidence to support probable cause that heroin was inside the defendant's home was "at most three days old" and, thus, did not result in an illegal search).

[20] Similarly to *Ashley* and *Huffines,* here, the search warrant was based on one occurrence—the drone video evidence of possession of the drugs. The time difference here, however, makes this case distinguishable. Specifically, the four-day time period between the activity and issuance of the warrant was half the time of the periods in *Ashley* and *Huffines.* Moreover, while we look at the date of the video footage to determine whether probable cause existed, some lapse can also be accounted for here because Vormohr was in possession of the drone for likely at least one of those days. And, although we acknowledge that the woman in the video handled the alleged substances, the video also shows another individual—a man who Vormohr testified was Byers—handling the drone moments later in the same and subsequent video recordings. Based on the facts and circumstances before us, we cannot say that a four-day period between the activity and the finding of probable cause renders the warrant constitutionally stale.

## Conclusion

The trial court did not err in denying Byers' motion to suppress due to staleness under the Fourth Amendment. We affirm.

Affirmed.

Brown, J., and Altice, J., concur.